## UNITED STATES DISTRICT COURT
## OF THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLIANCE OF LEGAL CANNABIS ENTITIES-DC, LLC** | ) |
| 1717 Pennsylvania Avenue NW | ) |
| Suite 1025 | ) |
| Washington, DC 20006, | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. |
| | ) |
| **SADC LLC t/a GIFTED CURATORS** | ) |
| 2469 18th Street NW | ) |
| Washington, DC 20009, | ) |
| | ) |
| **ZMTS PARTNERS LLC t/a GIFTED CURATORS** | ) |
| 2469 18th Street NW | ) |
| Washington, DC 20009 | ) |
| | ) |
| **BMORE TOBACCO OUTLET LLC t/a GRASS & CO.** | ) |
| 1730 Columbia Road NW | ) |
| Washington, DC 20009, | ) |
| | ) |
| **ECCS LLC t/a HEADY CLUB** | ) |
| 1648 Columbia Road NW | ) |
| Washington, DC 20009, | ) |
| | ) |
| **THE BASEMENT LLC** | ) |
| 1824 Columbia Road NW | ) |
| Washington, DC 20009 | ) |
| | ) |
| **CAPSTERDAM UNIVERSITY LLC** | ) |
| 2439 18th Street NW | ) |
| Washington, DC 20009 | ) |
| | ) |
| **CAPITAL REMEDY LLC t/a HOUSE OF** | ) |
| **ALTERNATIVE HEALING** | ) |
| 2309 18TH Street NW | ) |
| Washington, DC 20009, | ) |
| | ) |
| **AK TOBACCO & GROCERY LLC** | ) |
| 1438 Park Road NW | ) |
| Washington, DC 20010, | ) |

)

**LIT CITY LLC**                                           )
1426 Park Road NW                                          )
Washington, DC 20010,                                      )
                                                           )
**THE SAFE HOUSE LLC**                                     )
335 H Street NE                                            )
Washington, DC 20002,                                      )
                                                           )
**LIFELUXEE LLC t/a CANNABIS KARMA**                       )
825 Upshur Street NW                                       )
Washington, DC 20011,                                      )
                                                           )
**APPAREL BY GOLD LLC t/a ALL THE BUZZ DC**                )
3232 Georgia Avenue NW                                     )
Washington, DC 20010                                       )
                                                           )
**JAMES GOLDRING**                                         )
10921 Outpost Drive                                        )
North Potomac, Maryland 20878                              )
                                                           )
**METROPOLITAN ART & SCULPTURE**                           )
**COLLABORATION LLC t/a MASC**                             )
1528 U Street NW                                           )
Washington, DC 20009                                       )
                                                           )
**FLIGHT PASS LLC**                                        )
1338 U Street NW                                           )
Washington, DC 20009,                                      )
                                                           )
**THE GREEN ROOM #1, LLC**                                 )
1936 11th Street NW                                        )
Washington, DC 20009                                       )
                                                           )
**HATLAST LLC t/a NOMAD**                                  )
1202 H Street NE                                           )
Washington, DC 20002                                       )
                                                           )
**MLKNOMAD CORP. t/a NOMAD**                               )
2026 Martin Luther King Jr. Avenue SE                      )
Washington, DC 20020                                       )
                                                           )
**DDK PROPERTIES LLC**                                     )
12125 Heritage Park Circle                                 )
Silver Spring, Maryland 20906-4556,                        )

**INSURANCE USA LLC** )
5003 Crape Myrtle Court )
Ellicott City, Maryland 21042-6012, )
)
**JOSE JACINTO RIVERA** )
**MARIA A. RIVERA** )
719 Pebble Beach Drive )
Silver Spring, Maryland 20804, )
)
**MANUEL C. SOLLOSO** )
7008 Central Avenue )
Capitol Heights, Maryland 20743, )
)
**MALA STIEGLITZ TRUSTEE** )
201 N. Palm Drive )
Beverly Hills, California 90210-4917, )
)
**LTL INVESTMENTS LLC** )
15201 Plane Tree Court )
Bowie, Maryland 20721, )
)
**PATRICIA YUK YUEN TRUSTEE** )
**UNDER PATRICIA YUEN LIFE INSURANCE TRUST** )
9921 Mayfield Drive )
Bethesda, Maryland 20817-1651, )
)
**LOS HERMANOS INC.** )
1428 Park Road NW )
Washington, DC 20010-2802, )
)
**H STREET DEVELOPMENT GROUP LLC** )
9417 Falls Road )
Potomac, Maryland 20854-3917, )
)
**MORRIS CENTER FOR HEALTH & WELLNESS LLC** )
1717 N Street NW, Suite 1 )
Washington, DC 20036, )
)
**KENNETH D. MORRIS** )
528 Wheelmen Street )
Middletown, Delaware 19709 )
)
**GEORGIA AVENUE INVESTMENTS LLC** )
10803 Glen Mist Lane )
Fairfax, Virginia 22030-4559, )
)

3

| | |
|---|---|
| **JOHN S. SOULIOTIS** | ) |
| **ELLI SOULIOTIS** | ) |
| 10015 Carpers Farm Court | ) |
| Vienna, Virginia 22182, | ) |
| | ) |
| **JAHANBIN MANAGEMENT LLC** | ) |
| 4 Gentle Breeze | ) |
| Newport Coast, California 92647-1640, | ) |
| | ) |
| **AKLILE GEHREWOLD** | ) |
| **ENKENYELESH D. DASTA** | ) |
| 5102 9th Street NW | ) |
| Washington, DC 20001 | ) |
| | ) |
| **GEORGE EUGENE MURRAY** | ) |
| **d/b/a 1200 H STREET NORTHEAST PARTNERSHIP** | ) |
| 120 S. Ocean Blvd., Apt 3E | ) |
| Delray Beach, Florida 33483 | ) |
| | ) |
| **HUE THI NGUYEN** | ) |
| 754 Hobert Place NW | ) |
| Washington, DC 20001-3812 | ) |
| | ) |
| *Defendants.* | ) |

## COMPLAINT FOR EQUITABLE RELIEF

Plaintiff Alliance of Legal Cannabis Entities-DC, LLC ("ALCE" or "Plaintiff") brings this action against Defendants SADC LLC t/a Gifted Curators and ZMTS Partners LLC t/a Gifted Curators ("Gifted Adams Morgan Dispensary"), Bmore Tobacco Outlet LLC t/a Grass & Co. ("Grass Adams Morgan Dispensary"), ECCS LLC t/a Heady Club ("Heady Adams Morgan Dispensary"), The Basement LLC ("Basement Adams Morgan Dispensary"), Capsterdam University LLC ("Capsterdam Adams Morgan Dispensary"), Capital Remedy LLC t/a House of Alternative Healing ("Capital Adams Morgan Dispensary"), AK Tobacco & Grocery LLC ("AK Columbia Heights Dispensary"), Lit City LLC ("Lit Columbia Heights Dispensary"), The Safe

House LLC ("Safe H Street Dispensary"), Lifeluxee LLC t/a Cannabis Karma ("Karma Petworth Dispensary"), Apparel By Gold LLC t/a All the Buzz DC ("Buzz Park View Dispensary"), James ("Goldring"), Metropolitan Art & Sculpture Collaboration LLC t/a MASC ("MASC Adams Morgan Dispensary"), Flight Pass LLC ("Flight U Street Dispensary"), The Green Room #1, LLC ("Green U Street Dispensary"), Hatlast LLC t/a Nomad ("Nomad H Street Dispensary"), MLKNOMAD Corp. t/a Nomad ("Nomad Anacostia Dispensary"), DDK Properties LLC ("2469 Property Owner"),  Insurance USA LLC ("1730 Columbia Property Owner), Jose Jacinto Rivera and Maria A. Rivera ("1648 Columbia Property Owner"), Manuel C. Solloso ("1624 Columbia Property Owner"), Mala Stieglitz Trustee ("2439 18th Property Owner"), LTL Investments LLC ("2309 18th Property Owner"), Patricia Yuk Yuen Trustee under the Patricia Yuen Life Insurance Trust ("1438 Park Property Owner"), Los Hermanos Inc. ("1426 Park Property Owner"), H Street Development Group LLC ("335 H Property Owner"), Morris Center for Health & Wellness LLC ("825 Upshur Property Owner"), Kenneth D. Morris ("Other 825 Upshur Property Owner"), Georgia Avenue Investments LLC ("3232 Georgia Property Owner"), John S. Souliotis and Elli Souliotis ("1528 U Property Owner"), Jahabin Management LLC ("1338 U Property Owner"), Aklile Gehrewold and Enkenyelesh D. Desta ("1936 11th Property Owner"), George Eugene Murray d/b/a 1200 H Street Northeast Partnership ("1200 H Property Owner"), and Hue Thi Nguyen ("2026 MLK Ave. Property Owner") for equitable relief, including injunctive relief against unlicensed cannabis dispensary-defendants to prevent them from continuing to sell illegal cannabis in the District of Columbia, and against property owner-defendants to prevent them from continuing to lease to unlicensed cannabis dispensaries.  Plaintiff also requests equitable relief through the disgorgement of defendants' profits for the damage caused by the negligence, gross negligence, false advertising, and unfair competition of Defendants that allowed illegal

5

cannabis dispensaries to operate in the District of Columbia, selling and promoting the sale of illegal cannabis in DC and violating the provisions of the Lanham Act, 15 U.S.C. §1125(a), and common law in the District of Columbia, against false advertising and unfair competition.  In support of this Complaint, Plaintiff states the following:

## PARTIES

1.      Plaintiff Alliance of Legal Cannabis Entities-DC, LLC ("ALCE") is an alliance representing the legal cannabis market in the District of Columbia and membership is open to all legal cannabis entities in the District of Columbia who have been operating in the past three years and were licensed by the District of Columbia's Alcohol Beverage and Cannabis Administration ("ABCA") or its predecessor agency, the District of Columbia Department of Health ("DOH") to cultivate cannabis flower (in a variety of strains, both THC and CBD, and hemp) in the District of Columbia ("cultivators"), to manufacture various cannabis products in the District of Columbia using cannabis flower cultivated in the District of Columbia, *e.g.* pre-rolls, cartridges, concentrates, vapes, edibles, etc. ("manufacturers"), and/or to sell to the public in accordance with the regulatory rules and regulations of ABCA, the legal cannabis flower and other cannabis products cultivated and manufactured in the District of Columbia ("retailers" or "dispensaries").  This legal cannabis market has been damaged by the unlicensed and illegal cannabis dispensaries advertising and operating in interstate commerce, the property owners who provided the commercial space for them to operate and advertise in interstate commerce the property location, and other participants materially contributing to the illegal cannabis market. All legal licensees (cultivators, manufacturers, and dispensaries) have been harmed by lost commercial sales diverted to the illegal cannabis market promoted, managed, and materially assisted by the defendants here.  ALCE is open to all licensees, including that group of 15

licensees who received their licenses before January 1, 2024, and were operating for 3 or more years before that. However, new cannabis licenses are now being issued by ABCA and these new licensees are also being damaged by the illegal cannabis market. ALCE is open to both original and new licensees.

2.     ALCE is an LLC organized in the District of Columbia with its principal place of business at 1717 Pennsylvania Avenue NW, Suite 1025, Washington, DC 20006. All members of ALCE were licensed by ABCA (or DOH and subsequently renewed by ABCA) to cultivate/manufacture cannabis flower and other cannabis products in the District of Columbia, and/or to sell such legal cannabis at retail in the District of Columbia. Two such licensees, DC Holistic Wellness Group LLC (with its principal place of business at 4721 Sheriff Road NE, Washington, DC 20019) and Herbal Alternatives II LLC (with its principal place of business at 1710 Rhode Island Avenue NW, Washington, DC 20036), both LLCs organized in the District of Columbia, are the organizing members of ALCE. Other licensees who have or had cultivation/manufacturing licenses and/or cannabis retailer licenses have joined ALCE. ALCE also remains open for all cannabis licensees to become ALCE members at any time.

3.     Defendants SADC LLC t/a Gifted Curators and ZMTS Partners LLC t/a Gifted Curators ("Gifted Adams Morgan Dispensary") operate an unlicensed and illegal cannabis dispensary in the commercial space at 2469 18th Street NW, Washington, DC 20009. SADC LLC is an LLC organized in the District of Columbia with its principal place of business at 2469 18th Street NW, Washington, DC 20009. ZMTS Partners LLC is a separate LLC also organized in the District of Columbia with its principal place of business at 2469 18th Street NW, Washington, DC 20009. Together SADC LLC and ZMTS Partners LLC are jointly responsible for operating Gifted Adams Morgan Dispensary and share liability.

4.      Defendant Bmore Tobacco Outlet LLC t/a Grass & Co. ("Grass Adams Morgan Dispensary") operates an unlicensed and illegal cannabis dispensary in commercial space at 1730 Columbia Road NW,  Washington, DC 20009.  The Grass Adams Morgan Dispensary is an LLC organized in the District of Columbia with its principal place of business at 1730 Columbia Road NW,  Washington, DC 20009.

5.      Defendant ECCS LLC t/a/ Heady Club ("Heady Adams Morgan Dispensary") operates an unlicensed and illegal cannabis dispensary at 1648 Columbia Road NW, Washington, DC 20009. The Heady Adams Morgan Dispensary is an LLC organized in the District of Columbia with its principal place of business at 1648 Columbia Road NW, Washington, DC 20009.

6.      Defendant The Basement LLC ("Basement Adams Morgan Dispensary") operates an unlicensed and illegal cannabis dispensary at 1824 Columbia Road NW, Washington, 20009. The Basement Adams Morgan Dispensary is an LLC organized in the District of Columbia with its principal place of business at 1824 Columbia Road NW, Lower Level #B, Washington, DC 20009.

7.      Defendant Capsterdam University LLC ("Capsterdam Adams Morgan Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 2439 18th Street NW, Washington, DC 20009.  The Capsterdam Adams Morgan Dispensary is an LLC organized in the District of Columbia with its registered business address at 2439 18th Street NW, Washington, DC 20009.

8.      Defendant Capital Remedy LLC t/a House of Alternative Healing By Capital Remedy ("Capital Adams Morgan Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 2309 18th Street NW, Washington, DC 20009. The Capital Adams

Morgan Dispensary is an LLC organized in the District of Columbia with its business office listed at 465 Florida Avenue NW, Apt B, Washington, DC 20001.

9.      Defendant AK Tobacco & Grocery LLC ("AK Columbia Heights Dispensary") operates an unlicensed and illegal cannabis dispensary at 1438 Park Road NW, Washington, DC 20010. The AK Columbia Heights Dispensary is an LLC organized in the District of Columbia with its principal place of business at 1538 Park Road NW, Washington, DC 20010.

10.     Defendant Lit City LLC ("Lit Columbia Heights Dispensary") operates an unlicensed and illegal cannabis dispensary in the District of Columbia that leases commercial space at 1426 Park Road NW, Washington, DC 20010. The Lit Columbia Heights Dispensary is an LLC organized in the District of Columbia with its principal place of business at 1426 Park Road NW, Washington, DC 20010.

11.     Defendant The Safe House LLC ("Safe H Street Dispensary") operates an unlicensed and illegal cannabis dispensary in the District of Columbia that leases commercial space at 335 H Street NE, Washington, DC 20002.  The Safe H Street Dispensary is an LLC organized in the District of Columbia with its principal place of business at 335 H Street NE, Washington, DC 20002.

12.     Defendant Lifeluxee LLC t/a Cannabis Karma ("Karma Petworth Dispensary")  operates an unlicensed and illegal cannabis dispensary in the District of Columbia that leases commercial space at 825 Upshur Street NW, Washington, DC 20011.  The Karma Petworth Dispensary is an LLC organized in the District of Columbia with its listed place of business at 825 Upshur Street NW, Washington, DC 20011.

13.     Defendant Apparel By Gold LLC t/a All the Buzz ("Buzz Park View Dispensary") operates an unlicensed and illegal cannabis dispensary in the District of Columbia that leases commercial space at 3232 Georgia Avenue NW, Washington, DC 20010.  The Buzz Park View

Dispensary is an LLC organized in the District of Columbia with its principal place of business at 3232 Georgia Avenue NW,  Washington, DC 20010.

14.    Defendant James Goldring ("Goldring") is the managing and sole member of Defendant Apparel By Gold LLC ("Buzz Park View Dispensary") and he directly controls and operates the Buzz Park View Dispensary, an unlicensed and illegal cannabis dispensary, as his alter ego. Mr. Goldring is a resident of the State of Maryland and resides at 10921 Outpost Drive, North Potomac, Maryland 20878.  Defendant Goldring is included as a Defendant here based on Plaintiff's request to piece the corporate veil between him and Buzz Park View Dispensary.

15.    Defendant Metropolitan Art & Sculpture Collaboration LLC t/a MASC ("MASC U Street Dispensary") operates an unlicensed and illegal cannabis dispensary in the District of Columbia that leases commercial space at 1528 U Street NW, Washington, DC 20009.  The MASC U Street Dispensary is an LLC organized in the District of Columbia with its principal place of business at 1528 U Street NW, Washington, DC 20009.

16.    Defendant Flight Pass LLC ("Flight U Street Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 1338 U Street NW, Washington, DC 20009.  The Flight U Street Dispensary is an LLC organized in the District of Columbia with its principal place of business at 1338 U Street NW, Washington, DC 20009.

17.    Defendant The Green Room #1, LLC ("Green U Street Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 1936 11th Street NW, Washington, DC 20009. The Green U Street Dispensary is an LLC organized in the District of Columbia with its business office listed at 1936 11th Street NW, Washington, DC 20009.

18.    Defendant Hatlast LLC t/a Nomad ("Nomad H Street Dispensary") operates an unlicensed and illegal cannabis dispensary in the commercial space at 1202 H Street NE,

Washington, DC 20002.  The Nomad H Street Dispensary is an LLC organized in the District of

Columbia with its principal place of business at 1202 H Street NE, Washington, DC 20002.

19.     Defendant MLKNOMAD Corp. t/a Nomad ("Nomad Anacostia Dispensary") operates an

unlicensed and illegal cannabis dispensary in the commercial space at 2026 Martin Luther King

Jr. Avenue SE, Washington, DC 20020.  The Nomad Anacostia Dispensary is an LLC organized

in the District of Columbia with its principal place of business at 2026 Martin Luther King Jr.

Avenue SE, Washington, DC 20020.

20.     Defendant DDK Properties LLC ("2469 18th Property Owner") is the owner of the

commercial property located at 2469 18th Street NW, Washington, DC 20009.  The 2469 18th

Property Owner is an LLC organized in the State of Maryland but not in good standing in either

Maryland or DC and appears not to have filed any annual reports in Maryland since 2019.

However, it continues to pay real estate tax assessments in DC and the address on file is 12125

Heritage Park Circle, Silver Spring, Maryland 20906-4556.

21.     Defendant Insurance USA, LLC ("1730 Columbia Property Owner") is the owner of the

commercial property located at 1730 Columbia Road NW, Washington, DC 20009.  The 1730

Columbia Property Owner is an LLC organized in the State of Maryland with its principal place

of business listed as 5003 Crape Myrtle Court, Ellicott City, Maryland 21042-6012.

22.     Defendants Jose Jacinto Rivera and Maria A. Rivera ("1648 Columbia Property Owner"

or "Rivera") are the joint owners of the commercial property located 1648 Columbia Road NW,

Washington, DC 20009.  These defendants are individuals who reside in the State of Maryland at

719 Pebble Beach Drive, Silver Spring, Maryland 20804.

23.     Defendant Manuel C. Solloso ("1824 Columbia Property Owner") is the owner of  the

commercial property located at 1824 Columbia Road NW, Washington, DC 20009.  The 1824

Columbia Property Owner is a resident of the State of Maryland and resides at 7008 Central Avenue, Capital Heights, Maryland 20743.

24.     Defendant Mala Stieglitz Trustee is responsible for and controls the commercial property located at 2439 18th Street NW, Washington, DC 20009 as the trustee under the Joseph & Mala Stieglitz Trust.  Defendant Stieglitz resides in the State of California at 201 N. Palm Drive, Beverly Hills, California 90210-4917.

25.     Defendant LTL Investments LLC ("2309 18th Property Owner") is the owner of the commercial property located at 2309 18th Street NW, Washington, DC 20009.  The 2309 18th Property Owner is an LLC organized in the District of Columbia with its business address listed at 3540 Craine Highway #131, Bowie, Maryland 20716-1303 (which is a  mailbox inside the UPS Store).   The principal place of business is the residence of its managing member Mr. Leung Fo Lo at 15201 Plane Tree Court, Bowie, Maryland 20721.

26.     Defendant Patricia Yuk Yuen Trustee under the Patricia Yuen Life Insurance Trust ("1438 Park Property Owner") controls and is responsible for managing the commercial property located at 1438 Park Road NW, Washington, DC 20010.  The 1438 Park Property Owner is a trustee under the trust listed as the owner of the property who is a resident of the State of Maryland and resides at 9921 Mayfield Drive, Bethesda, Maryland 20817-1651.

27.     Defendant Los Hermanos Inc. (1426 Park Property Owner") is the owner of the commercial property located at 1426 Park Road NW, Washington, DC 20010. The 1426 Park Property Owner is an LLC organized in the District of Columbia with its business address listed as 1426 Park Road NW, Washington, DC 20010.

28.     Defendant H Street Development Group LLC ("335 H Property Owner") is the owner of commercial property located at 335 H Street NE, Washington, DC 20002.  The 335 H Property

Owner is an LLC organized in the State of Maryland with its principal place of business at 9417 Falls Road, Potomac, Maryland 20854-3917.

29.     Defendant Morris Center for Health & Wellness LLC ("825 Upshur Property Owner") is the owner of commercial property located at 825 Upshur Street NW, Washington, DC 2011.  The 825 Upshur Property Owner is an LLC organized in the District of Columbia with its principal place of business at 1717 N Street NW, Suite 1, Washington, DC 20036.

30.     Defendant Kenneth D. Morris ("Other Upshur Property Owner") originally purchased the commercial property located at 825 Upshur Street NW, Washington, DC 20011 on July 2004 from the United States who had acquired in the property in a criminal forfeiture case.  On November 21, 2023, Mr. Morris transferred the property to his LLC - the 825 Upshur Property Owner -  but remained liable related to the use and management of the property for all times prior to this transfer.  The Other Upshur Property Owner is an individual who is a resident of the State of Delaware and resides at 528 Wheelmen Street, Middletown, Delaware 19709.

31.     Defendant Georgia Avenue Investments LLC ("3232 Georgia Property Owner") is the owner of the commercial property at 3232 Georgia Avenue NW, Units 101 and 102, Washington, DC 20010.  The 3232 Georgia Property Owner is an LLC organized in the Commonwealth of Virginia with its principal place of business at 10803 Glen Mist Lane, Fairfax, Virginia 22030-4559.

32.     Defendants John S. Souliotis and Elli Souliotis ("1528 U Property Owner") are the joint owners of the commercial property located at 1528 U Street NW,  Washington, DC 20009.  The 1528 U Property Owner is a married couple who reside in the Commonwealth of  Virginia at 10015 Carpers Farm Court, Vienna, Virginia 22182.

33.     Defendant Jahanbin Management LLC ("1338 U Property Owner") is the owner of commercial property located at 1338 U Street NW, Washington, DC 20009.  The 1338 U Property Owner is an LLC organized in the State of California with its business address listed at 4 Gentle Breeze, Newport Coast, California 92647-1640.

34.     Defendants Aklile B. Gebrewold ("Gebrewold") and Enkenylesh D. Desta ("Desta") (together "1936 11th Property Owner") are the joint owners of the commercial property located at 1936 11th Street Washington, DC 20009. The 1936 11th Property Owner are individuals who reside in the District of Columbia at 5012 9th Street NW, Washington, DC 20011.

35.     Defendant George Eugene Murray is the General Partner in 1200 H Street Northeast Partnership ("1202 H Property Owner"), a general partnership formed in the District of Columbia, is the owner of commercial property located at 1202 H Street NE, Washington, DC 20002.  The 1202 H Property Owner is an individual who resides in the State of Florida at 120 S. Ocean Blvd, Apt 3E, Delray, Florida 33483.

36.     Defendant Hue Thi Nguyen ("2026 MKL Ave. Property Owner") is the owner of commercial property located at 2026 Martin Luther King Jr. Avenue SE, Washington, DC. The 2026 MLK Ave. Property Owner is an individual who resides in the District of Columbia at 754 Hobert Place NW, Washington, DC 20001-3812.

## JURISDICTION AND VENUE

37.     This Court has federal question jurisdiction over this case, 28 U.S.C. §1331 and 15 U.S.C. §1121, and supplemental jurisdiction over the state law claims, 28 U.S.C. §1367.

38.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the actionable activities took place in the District of Columbia, the illegal dispensaries operated in the District

of Columbia and all commercial properties used by these dispensaries are located in the District of Columbia.

## FACTS

### A. ALCE

39.     The cultivation of cannabis and the manufacture of cannabis products in the District of Columbia and the sale and distribution of such is governed by the Legalization of Marijuana for Medical Treatment Amendment Act of 2010, as amended, D.C. Code §7-1671.05, *et seq*. and the rules issued by ABCA, D.C. Code §25-204.02 and DCMR Title 22-C. These laws and ABCA rules require that cultivators, manufacturers, and retailers of cannabis be licensed by ABCA. D.C. Code §7-1671.06.  The only cannabis flower (including all THC and CBD strains, hemp) and other cannabis products that can be legally sold in the District of Columbia are subject to these laws and regulations.

40.     D.C. Code §7-1671.01(22) states: An "unlicensed establishment" is a sole proprietorship, partnership, or other business entity that:

> (A) Sells, exchanges as part of a commercial transaction, or delivers cannabis and cannabis products;
> (B) Operates at or delivers from a specific location in the District; and
> (C) Is not licensed by ABCA as a cultivation center, retailer, internet retailers, manufacturer, courier or testing laboratory.

41.     D.C. Code §7-1671.08(a) provides that:

> Any person who manufactures, cultivates, posses, administers, dispenses, distributes or uses cannabis, or manufactures, posses, distributes, or uses paraphernalia, in a manner not authorized by this chapter or the rules issued pursuant to §7-1671.13 shall be subject to criminal prosecution and sanction under subchapter I of Chapter 11 of Title 48[§48-1101 *et seq*.].[1]

---

[1] The definition of "cannabis" as used throughout DC laws and regulations is defined in Section 102(3) of the DC Controlled Substance Act of 1981, D.C. Code §48-901.02.  This definition adopted in the DC Marijuana Legalization Act, D.C. Code §7-1671.01(2A).  This definition includes all parts of the plant genus Cannabis which includes THC, CBD and all other cannabinoids. *See also, Korneguy v. United States*, 236 A.3d 414, 420 (D.C.

42.    Unlicensed and illegal cannabis dispensaries in DC often sell illegal flavored tobacco products and illegal "magic" mushrooms (containing psilocybin, a Schedule I Controlled Substance that has a hallucinogenic effect) to increase the mix of "buzz" products offered consumers to gain an unfair competitive over legal cannabis dispensaries that do not sell these illegal products. Additionally, many illegal cannabis dispensaries are located within ¼-mile of a middle or high school where it is illegal to sell any electronic smoking device.

43.    The Flavored Tobacco Prohibition Amendment Act of 2021, §7-1721.01, *et seq.*, makes it illegal to sell flavored tobacco products or electronic smoking devices within ¼-mile of a middle or high school.

> §7-1721.08(a)- No person shall sell, offer for sale, receive for sale, distribute, purchase or facilitate the sale of:
> (1) A flavored tobacco product; or
> (2) An electronic smoking device within one quarter mile of any middle or high school in the District.

44.    D.C. Code §7-1721.01 Definitions:

> (1)  "Characterizing flavor" means a distinguishable taste or aroma other than tobacco, including fruit, chocolate, vanilla, candy, dessert, alcoholic beverage, menthol, mint or evergreen.
> (1A) "Electronic smoking device" shall have the same meaning as provided in §7-741.01(1).
> (1B)  "Flavored tobacco product" means any tobacco product or synthetic nicotine product that imparts a characterizing flavor.

45.    The Electronic Cigarette Parity Amendment Act of 2016, D.C. Code §7-741.01

Definitions:

> (1) "Electronic smoking device" means any products, including one composed of a heating element, battery, or electronic circuit, that contains or delivers nicotine or any other substance intended for human consumption that can be used by a person to simulate smoking through inhalation of vapor or aerosol

---

2020)(noting D.C. Code §48-904.01(a)(1) does not permit an adult to "sell, offer for sale, or make available for sale" cannabis, except pursuant to D.C. Code §7-1671.01 *et seq*. which establishes the licensing procedures under ABCA.)

from the product.  The term "electronic smoking device" includes any such products, regardless of whether it is manufactured, distributed, marketed, or sold as an e-cigarette, e-cigar, e-pipe, e-hookah, vape pen, or any other product name or descriptor.

46.     The initial cultivation/manufacturing and retailing licenses were issued by the DC Government in 2013, and during the past several years prior to this lawsuit, there had been fifteen licensees who constituted the legal market in the District of Columbia. Several additional cannabis licensees have been authorized by ABCA since April 1, 2024.

47.     In the past several years due to the operation of illegal unlicensed dispensaries selling cannabis products that are illegal in the District of Columbia, the legal, licensed cannabis market has lost substantial commercial sales diverted to the illegal cannabis market.  Illegal cannabis products are largely indistinguishable by consumers from legal cannabis products which is why the misrepresentation of the legality and origin of the illegal cannabis by defendants and their false advertising has harmed the legal cannabis market through the loss of commercial sales made by illegal dispensaries. Some public estimates put the illegal cannabis revenues in the District of Columbia at $600 million plus per year.

48.     Faced with squeezed margins and substantial commercial sales diverted to the illegal market, several legal licensed cultivators/manufacturers and retailers have been forced to discontinue operations, while illegal market participants such as defendants here have continued to grow and divert commercial sales. Illegal cannabis dispensaries are competitors with the legal cannabis licensees, and those who materially participated in the illegal dispensaries' establishment or by financing, selling, or transporting illegal cannabis, or leasing commercial retail space to permit illegal cannabis dispensaries to make commercial retail cannabis sales, are

then also competitors with legal licensees.  All members of ALCE would have standing to sue the defendants in this case.

49.     In recognition of the need for the legal cannabis market to pursue legal action to stop continued sales of illegal cannabis and to seek equitable relief for lost commercial sales, several licensed cannabis entities decided to form the ALCE as an open alliance for all legal cannabis licensees harmed by the continued operation of illegal dispensaries and other participants who materially participated or assisted in the establishment and operation of illegal dispensaries engaged in the sale of illegal cannabis.

50.     ALCE is open to all legal cannabis entities (cultivators, manufacturers, and retailers) including new legal entities, to become members.[2]  The purpose of ALCE as stated in Section 1.4 of its Operating Agreement:

> The purpose of the Company [ALCE] is to protect and safeguard the legal cannabis market in the District of Columbia as represented by those legal entities who were licensed by the District of Columbia Alcohol Beverage and Cannabis Administration ("ABCA") as operators of cannabis retail facilities (i.e., dispensaries) or cannabis cultivation and manufacturing facilities. To accomplish this purpose, the Company is established to pursue legal action against Persons who have either directly or indirectly participated in illegal activities or aided and abetted illegal operators in the illegal sale, distribution, delivery, promotion, handling, advertising or payment for illegal cannabis or illegal substitutable products or otherwise assisting, promoting or enabling these illegal entities to operate and inflict economic harm on individual legal cannabis licensees and/or the legal cannabis market in the District of Columbia. Further, the Company is authorized to engage the services of Persons to represent the Company or to provide investigative or analytical services related to illegal cannabis entities and their operations and Persons providing them with goods and services.

> In recognition of the economic harm inflicted on the legal DC cannabis market over the past several years by the illegal cannabis participants and enablers, membership in the ALCE – DC is open to all legal entities licensed by ABCA, who operate or operated legal cannabis facilities.  All Members authorize ALCE - DC to negotiate on behalf of the Members with the Persons involved in or otherwise assisting or enabling the illegal

---

[2] There are some restrictions with respect to new members who previously operated illegal dispensaries and who are being sued or subject to being sued by ALCE on behalf of its members.

cannabis market in DC so as to contribute to the reduction in illegal sales, removal of illegal products from the market, and to obtain compensation for the economic harm inflicted on the legal cannabis market and licensed entities generally in DC in the last 3 years and continuing.  All Members authorize ALCE – DC to represent their respective interests in the legal cannabis market in DC in judicial proceedings as part of ALCE – DC seeking damages done to the legal market in DC, and to represent to the Court that ALCE – DC has the same standing as each individual Member would have had if it had separately participated as a plaintiff.

51.    All members of ALCE accept its Operating Agreement and the purpose quoted above.

52.    Since membership in ALCE is permanently open to cannabis licensees in the District of Columbia, ALCE expects additional licensees to join ALCE to help protect the legal cannabis market in the District of Columbia from the harm caused by illegal cannabis market participants, including the harm they cause by the diversion of commercial sales to the illegal market involving the sale and delivery of illegal cannabis flower and other cannabis products.

53.    ACLE represents its members collectively and has the same standing to sue that its individual members have—all of whom are (were) licensed cultivators, manufacturers and/or retailers, and as a consequence, ALCE has standing to sue the unlicensed and illegal dispensaries in the District of Columbia and those participants, including property owners, who have contributory liability or are otherwise liable for the material assistance they provided the illegal dispensaries in the sale and delivery of illegal cannabis flower and other cannabis products.

54.    ALCE is suing on behalf of the legal cannabis market in the District of Columbia for the injunctive relief from the ongoing harm being caused by defendants to the legal cannabis market represented by ALCE and for equitable damages for the loss of commercial sales from the legal cannabis market in the past three years.  Since ALCE is only seeking equitable relief in the form of injunctive relief against defendants to cease illegal cannabis sales and equitable damages in the form of disgorgement of defendants' profits, the direct participation here of individual members of ALCE is not necessary and not needed.

55.     Section 35(a) of the Lanham Act, 15 U.S.C. §1117(a), permits ALCE "subject to the

principles of equity to recover (1) defendant's profits, (2) any damages sustained by the plaintiff,

and (3) the costs of the action."  ALCE only seeks to recover the defendants' profits and the costs

of this action. And, as otherwise provided in Section 35(a):

> The court shall assess such profits and damages or cause the same to be assessed
> under its direction.  In assessing profits the plaintiff shall be required to prove
> defendant's sales only; defendant must prove all elements of cost or deduction
> claimed.  In assessing damages the court may enter judgment, according to the
> circumstances of the case, or any sum above the amount found as actual damages,
> not exceeding three times such amount.  If the court shall find that the amount of the
> recovery based on profits is either inadequate or excessive the court may in its
> discretion enter judgment for such sum as the court shall find to be just, according to
> the circumstances of the case.  Such sum in either of the above circumstances shall
> constitute compensation and not a penalty.  The court in exceptional cases may award
> reasonable attorney fees.

56.     ALCE seeks disgorgement of the profits of each property owner-defendant based on the

lease revenues each property owner-defendant received from illegal dispensary-defendants.

Since the lease rates used are triple net[3], the profits of each property-owner are equivalent to

their lease revenues.  The lease revenues/profits of each property owner-defendant are reasonably

determined from using the Costar[4] commercial property database plugged into the following

formula:

> •(Square Footage of the property leased by the property owner-defendant) x
> (Lease Rate for the leased property) x (time period the property owner-defendant
> leased to the illegal dispensary-defendant) =  Profits to be disgorged

---

[3] Triple net is a lease –common in commercial real estate- where the tenant pays all expenses, including real estate taxes, building insurance and maintenance, in addition to the cost of rent and utilities.

[4] Costar is the world's leader in real estate information.  It has the most comprehensive database and online platform for commercial real estate information, analytics and news, and its database includes leasing information for all the commercial properties involved in this case.

57.    ALCE seeks disgorgement of the profits of each illegal dispensary-defendant based on the sales revenues received by each illegal dispensary-defendant from the sale of illegal cannabis.  The sale of legal goods in the illegal dispensaries is assumed to be negligible since such products were just for "show," and the sale of any other illegal products deemed substitutable for cannabis (*e.g*., "magic" mushrooms) are classified as such for these profit calculations.  The sales revenues/profits of each illegal cannabis dispensary-defendant are reasonably determined from using the same Costar commercial database plugged into the following formula:

> •Sales revenues are reasonably estimated at 10 times greater than commercial rent paid (10 is used in these calculations as a reasonable factor which equals paying 10% of sales in rent);
> •Dispensary retail mark-up is assumed to be comparable to other industry retail margins of approximately 60%, minus rent (10%) and other expenses, leaving 25% of sales as the net profits.
> •(Rent x 10) x 25% = Profits to be disgorged

58.    The disgorgement of the defendants' profits is equitable relief and does not require the participation of any individual members of ALCE as shown in this Complaint.

**B.    2469 18th PROPERY OWNER – GIFTED ADAMS MORGAN DISPENSARY**

59.    Defendant DDK Properties LLC ("2469 18th Property Owner") leases 1059 sf of commercial space on the 2nd Floor to Defendant SADC LLC t/a Gifted Curators and Defendant ZMTS Partners LLC t/a Gifted Curators ("Gifted Adams Morgan Dispensary") who operate an illegal cannabis dispensary at that location. According to Costar, the move-in date under this lease was December 1, 2021, and the rent was $30.61/sf; ACLE uses this rate in its calculations of the property owner's profits.

60.    The 2469 18th Property Owner intentionally leased its commercial space for the sale of illegal cannabis. The 2469 18th Property Owner was aware that its tenant was operating as an

illegal cannabis dispensary, and online photos of the dispensary posted to its Google Search webpage confirms that it opened December 1, 2021. The 2469 Adams Morgan Dispensary did not file for even a basic general business license (400322809232) until September 1, 2022, and neither the dispensary nor the property owner ever filed for a Certificate of Occupancy. The property owner and dispensary concealed from the DC Zoning Office that they intended to use the property as an illegal cannabis dispensary.

61.     The Gifted Adams Morgan Dispensary did not hide from the 2469 18th Property Owner its intended use of the property for illegal purposes.  Anyone walking inside the store immediately sees the glass display cases with cannabis products and nothing else for sale.

62.     The Gifted Adams Morgan Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA. It has at all times operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold by the Gifted Adams Morgan Dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold at this location was illegal and had been purchased in interstate commerce by the Gifted Adams Morgan Dispensary from unknown illegal sources in other states or foreign countries.  Additionally, the Gifted Adams Morgan Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis.

63.     The 2469 18th Property Owner never investigated or conducted any meaningful due diligence review of the Gifted Adams Morgan Dispensary before allowing it to begin operating as an unlicensed and illegal dispensary.  The 2469 18th Property Owner pursued the lessee to use the space to operate an illegal cannabis dispensary as quickly as it could without regard to the law, the impact of legal dispensaries or the potential harm of allowing the public to consume cannabis from unknown, illegal sources.  The 2469 18th Property Owner never took any action to

require the Gifted Adams Morgan Dispensary to obtain the legal right to sell cannabis in DC and cease selling illegal cannabis.  Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

64.    The Gifted Adams Morgan Dispensary promotes itself and advertises in interstate commerce as a legal dispensary selling legal cannabis products as a means to unfairly compete against legal dispensaries who are required to purchase legal cannabis and abide by ABCA regulations. The Gifted Adams Morgan Dispensary advertises on social media (Instagram (@gifted.curators.dc), YouTube, Facebook (Gifted Curators DC), Reddit), on paid guide sites to illegal cannabis dispensaries (Yelp, Gentlemantoker.com, Urbanaroma.com, Mrweednearme.com, TrustedBud, Smokepedia.com, Wanderlog, Weebly, ZeeMaps), on various internet postings and ads (Google Search), and its own website (www.giftedcuratorsdc.com).  It uses the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

65.    On its website the Gifted Adams Morgan Dispensary promotes it extensive inventory of a wide variety of illegal cannabis products: flower ($30-$215), pre-rolls ($10-$135), edibles ($15-$85), Concentrates ($30-$125), pre-rolls (infused and dipped ($20), disposable ($50).  All these cannabis products are misrepresented as being legal to buy in DC under DC laws.

66.    On its website and on its internet postings and ads, the Gifted Adams Morgan Dispensary falsely promotes itself as being a legal dispensary in DC claiming it is "I-71 Compliant" and that it is legal in DC for it as a commercial retailer to "gift" cannabis to a customer, and it is legal :

> Gifted Curators DC Weed Dispensary is the most reviewed and best
> recreational cannabis I-71 dispensary in DC.  Ease, safety and discrete

are our top concerns for your recreational cannabis gifting experience.
21+ ID, no medical card required.
\*\*\*
Washington, DC has gained a reputation for having some of the finest
cannabis dispensaries in the United States following its legalization in
2014. The passage of Initiative 71 marked a significant turning point,
bringing about a flood of recreational dispensaries. When looking for
the best marijuana dispensaries in DC, it's essential to prioritize reliability,
affordability and proper licensing. Gifted Curators encompasses these
qualities and more.

67.     In its FAQ section of its website it poses the question and answer:

Q. Is recreational weed legal in DC?
A. Yes! Through I-71 you can be gifted cannabis products.

68.     ABCA has found that illegal dispensaries claiming to be "I-71 Complaint" was false

advertising, a violation of DC Code §7-1671.06(c-1), and a misrepresentation to the public as to

the legalization of commercial transactions being conducted by unlicensed cannabis dispensaries.

69.     DC's 2014 Initiative-71 was a voter-approved ballot initiative in the District of Columbia

that legalized recreational use of cannabis and made it legal for a person 21 and older to possess

up to 2 ounces and allowed personal cultivation of up to six plants per house or dwelling unit. It

did not authorize the sale or transfer for remuneration of cannabis, nor did it allow for the

commercial cultivation of or manufacture of cannabis products. The DC Government has

repeatedly emphasized that commercial "gifting" is the transfer for remuneration and is illegal.

Furthermore, it is not just the retail transaction that is illegal, but the cannabis flower and other

cannabis products being sold that are themselves illegal and sourced from unknown illegal

sources in other states and foreign countries.

70.     On January 26, 2024, Plaintiff investigated the Gifted Adams Morgan Dispensary and

observed the display and sale of illegal cannabis.

71.     Deceptively packaged cannabis from illegal sources are marketed by Gifted Adams Morgan  along with flavored tobacco products as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.

72.     On July 26, 2024, ABCA's Supervisory Investigator investigated the Gifted Adams Morgan Dispensary and found ongoing illegal cannabis activity.  A warning letter was sent to the property owner and illegal dispensary (ZMTS Partners LLC) advising of the illegal sale and distribution of cannabis.

73.     On October 2, 2024, in a follow-up investigation, ABCA's Supervisory Investigator found that the illegal dispensary was continuing to sell illegal cannabis.  A field test by MPD determined that the cannabis seized at the illegal dispensary contained "THC and amphetamines."

74.     On October 9, 2024, ABCB issued its Cease and Desist Order to Gifted Adams Morgan Dispensary and the property owner ordering them "to cease the illegal purchase, sale, exchange, delivery, or any other form of commercial transaction involving cannabis immediately."

75.     On November 17, 2024, Plaintiff investigated the Gifted Adams Morgan Dispensary and observed that this illegal dispensary was continuing to display and sell illegal cannabis.

76.     The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were made by Gifted Adams Morgan Dispensary.  The 2469 18th Property Owner materially contributed to the Gifted Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 2469 18th Property Owner in leasing its commercial space to the Gifted Adams Morgan Dispensary (and allowing the publication in interstate commerce of the image and address of the property as the location source of illegal

cannabis), the illegal cannabis sales by Gifted Adams Morgan Dispensary would not have been made.

77.    The 2469 18th Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 3 years (through December 31, 2024) is $193,797 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 36 months).

78.    The Gifted Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $1,937,970 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $484,492 (equaling 25% of estimated sales).  Defendants SADC LLC and ZMTS Partners LLC share common members but since ZMTS Partners LLC was only organized on March 15, 2024, it should be responsible for equitable damages for 11 months (through December, 2024) continuing through the date judgment is issued, while SADC LLC is responsible for the 2 years/1 month (25 months) prior to ZMTS Partners being organized as an LLC.

**C.    1730 COLUMBIA PROPERTY OWNER – GRASS ADAMS MORGAN DISPENSARY**

79.    Defendant Insurance USA LLC ("1730 Columbia Property Owner") leased 598 sf of commercial space to Defendant Bmore Tobacco Outlet LLC t/a Grass & Co. ("Grass Adams Morgan Dispensary")  who operates an illegal dispensary within a smoke shop at that location that also sells illegal flavored tobacco. The name of the dispensary "Grass & Co" written across the front windows with illuminated Green Cross and "CBD" signs are intended to signal that cannabis is sold inside the store.  According to Co-Star, the move-in date under this lease was

April 1, 2017 and the lease rate at time of signing was $55/sf; ALCE used this rate in its calculation of the property owner's profits.

80.    The 1730 Columbia Property Owner intentionally leases its commercial space for the sale of illegal cannabis.  The 1730 Columbia Property Owner has been leasing this commercial space to the Grass Adams Morgan Dispensary for the past 7 year/9 months, as confirmed by photos posted on the internet.

81.    The Grass Adams Morgan Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA. It has at all times operated as an unlicensed and illegal dispensary selling illegal cannabis. None of the cannabis sold by this dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia and is illegal under the laws of the District of Columbia.  The Grass Adams Morgan Dispensary purchases illegal cannabis in interstate commerce from unknown illegal sources in other states or foreign countries.   Additionally, the Grass Adams Morgan Dispensary relies on the use of interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

82.    The 1730 Columbia Property Owner never investigated or conducted any meaningful due diligence review of the Grass Adams Morgan Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of unauthorized and illegal cannabis.  The 1730 Columbia Property Owner never took any other action to require the Grass Adams Morgan Dispensary to obtain the legal right to sell cannabis in DC.  Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

83.     The Grass Adams Morgan Dispensary promotes itself and advertises in interstate commerce through its use of social media (Instagram (@grassandcompany), YouTube, Facebook (Grass & Co.)), its own website (www.grassand.co), and other internet postings and ads (Medium.com, Meganug, MapQuest, etc.).  It uses the internet to falsely promote and advertise itself as a legal dispensary/smoke shop and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

84.     Although the Grass Adams Morgan Dispensary sells both THC and CBD cannabis products, more recently it has focused its promotion of cannabis sales on CBD products.  On Medium.com the dispensary states:

> Are you looking for CBD in DC? This is your guide to all things CBD
> in Washington, DC.  From the friendly folks over at Grass & Co. at 1730
> Columbia Rd NW.

85.     On Facebook the Grass Adams Morgan dispensary confirms that it sells a variety of CBD cannabis products, including flower, oils, infused drinks, edibles, some Flowerz-branded CBD products, and CBD vapes—all illegal in DC.

> We're a smoke shop specializing in CBD oil, CBD flower and CBD
> Edibles.

86.     Deceptively packaged cannabis from illegal sources are marketed by Grass Adams Morgan Dispensary, along with flavored tobacco products as premium, as if they were legal products to gain an unfair competitive advantage over licensed dispensaries.

87.     On February 18, 2024, Plaintiff investigated the Grass Adams Morgan Dispensary and observed the display and sale of illegal cannabis and flavored tobacco.

88.     On June 13, 2024, ABCA Supervisory Investigator investigated the Grass Adams Morgan Dispensary and found illegal cannabis activity taking place in the dispensary.  A warning letter

from ANCA was sent on June 13, 2024 to the 1730 Columbia Property Owner and the Grass Adams Morgan Dispensary to stop their illegal cannabis activities.

89.     On November 15, 2024, Plaintiff again investigated the Grass Adams Morgan Dispensary and observed the continued display and sale of illegal cannabis.

90.     The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were made by Grass Adams Morgan Dispensary.  The 1730 Columbia Property Owner materially contributed to the Grass Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1730 Columbia Property Owner in leasing its commercial space to the Grass Adams Morgan Dispensary (and allowing the publication in interstate commerce of the image and address of the property), the illegal cannabis sales by Grass Adams Morgan Dispensary would not have been made.

91.     The 1730 Columbia Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 3 years is $98,670 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 36 months) fully attributable to the presence and availability of illegal cannabis and other illegal substitutable products.

92.     The Grass Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $986,670 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $246,675 (equaling 25% of estimated sales) of which 90% is estimated to be derived from the sale of illegal cannabis and other illegal substitutable products.

###### D.    1648 COLUMBIA PROPERT OWNER – HEADY ADAMS MORGAN DISPENSARY

93.    Defendants Jose Jacinto Rivera and Maria A. Rivera ("1648 Columbia Property Owner")
lease 897 sf of commercial space to ECCS LLC t/a Heady Club ("Heady Adams Morgan
Dispensary") who operates an unlicensed and illegal cannabis dispensary at that location. The
front door to the stairways up to the second floor dispensary is labeled as "Heady Club DC Weed
& Marijuana Dispensary," and the front of the building has a large, illuminated sign "HCDC."
Inside the only items for sale are various cannabis products.  According to Costar, the estimated
rent for this location is $43-$53/sf; ALCE used $53/sf in its calculation of the property owner's
profits as the most likely rate under the factual circumstances of this lease for the sale of illegal
cannabis.

94.    The 1648 Columbia Property Owner intentionally leased its commercial space for the
sale of illegal cannabis.   The 1648 Columbia Property Owner was leasing to the Heady Adams
Morgan Dispensary since at least August 1, 2021 (3 years/5 months ago), as confirmed by
multiple photo postings on the dispensary's Google page. Both the property owner and
dispensary sought to conceal from the DC Zoning Office that the space would be used for the
illegal sale of cannabis.

95.    The Heady Adams Morgan Dispensary does not have nor has it ever had a cannabis
retailer license issued by ABCA (or DOH).  At all times it has operated as an illegal dispensary
selling illegal cannabis. None of the cannabis sold by this dispensary was cultivated or
manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently
all cannabis sold from this location was illegal and was purchased in interstate commerce by the
Heady Adams Morgan Dispensary from unknown illegal sources in other states or foreign

countries. The fact that the Heady Adams Morgan Dispensary has applied to ABCA for a cannabis retailer license does not negate the harm it has done to the legal cannabis market and ALCE for more than 3 years—and is continuing to do. Additionally, the Heady Adams Morgan relied on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

96.     The 1648 Columbia Property Owner never investigated or conducted any meaningful due diligence review of the Heady Adams Morgan Dispensary before entering into a lease because it knew that this dispensary was not licensed and would be involved in the sale of illegal cannabis. The 1648 Columbia Property Owner never took any other action to require the Heady Adams Morgan Dispensary to obtain a legal license to sell cannabis or cease selling it.  Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

97.     The Heady Adams Morgan Dispensary extensively promotes itself and advertises in interstate commerce through its use of social media (Instagram (@headyclubdc), Facebook (Heady Club DC), X (@HeadyClub DC)), paid internet guides to illegal dispensaries (Toker's Guide, Yelp, Leafy, Gentlemantoker.com, TrustedBud, Nextdoor, Patch, Budlords.com, weedclubdc.com, etc.), various internet postings and ads (Google Search, MapQuest,, TripAdvisor, etc.) and its website (www.headyclubdc.com).  All these internet postings and ads falsely promote the Heady Adams Morgan Dispensary as a licensed legal dispensary in DC, falsely advertise its cannabis products are legal to it to sell in DC under DC laws, and misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

98.     On its website the Heady Adams Morgan Dispensary claims that it operates as a legal I-71 complaint dispensary in order to give false assurances to customers that they are purchasing from an authorized source in DC.

> Greetings to our DC Weed Delivery & Dispensary conveniently located in Adams Morgan, Washington, DC.  We are an Initiative #71 complaint recreational weed delivery and cannabis store, where you can explore a variety of high-quality cannabis products available for weed delivery and in-store shipping directly from our website.
>
> We offer a broad spectrum of CBD, indica, sativa and hybrid strains, along with savory edibles, potent concentrates and full-spectrum vape cartridges. Whether you're a first-time explorer or a seasoned enthusiast, our collection caters to everyone.

99.     At the same time the Heady Adams Morgan Dispensary claims to be a legal dispensary, it attempts to give the impression on its website that purchasing from an actual legal dispensary requires a "Medical card" is a hinderance to buying cannabis when instead you can get legally from an i71 shop such as itself.

> Q. Do I need a Medical Marijuana Card to buy weed online in Washington, DC?
> A. No, you do not need a medical card to order weed delivery in Washington, DC. However, if you want to get your marijuana from a dispensary , you will need a medical card.
> ***
> If you don't want to go through the hassle of getting a medical card, you can always just buy your weed from our online delivery store.

100.    The Heady Adams Morgan website menu of cannabis products includes flowers, vapes cartridges, seeds & Clones, and pre-rolls. All of these products are misrepresented as legal products that it is allowed to sell legally in DC and online in interstate commerce

101.    Deceptively packaged cannabis from illegal sources are marketed by the Heady Adams Morgan Dispensary as legal products to gain an unfair competitive advantage over licensed dispensaries.

102.    On February 27, 2024, and again on November 15, 2024, Plaintiff investigated the Heady Adams Morgan Dispensary and observed the display and sale of illegal cannabis.

103.    The legal cannabis market in DC and ALCE members suffered damages as a result of diverted commercial sales that were made by Heady Adams Morgan Dispensary.  The 1648 Columbia Property Owner materially contributed to the Heady Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1648 Columbia Property Owner in leasing its commercial space to the Heady Adams Morgan Dispensary (and allowing the publication in interstate commerce of the image and address of the property), the illegal cannabis sales by Heady Adams Morgan Dispensary would not have been made.

104.    The 1648 Columbia Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 3 years is $142,623 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 36 months).

105.    The Heady Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $1,426,230 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $356,557 (equaling 25% of estimated sales).

### E.    1824 COLUMBIA PROPERTY OWNER – BASEMENT ADAMS MORGAN DISPENSARY

106.    Defendant Manuel C. Solloso ("1824 Columbia Property Owner") leased 1000 sf the commercial space in the basement of its commercial building to an unlicensed and illegal cannabis dispensary trading as "The Basement" ("Basement Adams Morgan Dispensary") who operated an unlicensed and illegal cannabis dispensary at this location.   According to Costar the

estimated rent for this location is $50-$61/sf; ALCE used $50/sf in its calculation of the property

owner's profits as the most likely rate for this lower level commercial space to sell illegal

cannabis.

107.    The 1824 Columbia Property Owner intentionally leased its commercial space to the

Basement Adams Morgan Dispensary for the sale of illegal cannabis not later than May 22, 2021,

as confirmed by the posting of photos on the dispensary's Google page. However, even before

that the property owner was leasing commercial space to another unlicensed cannabis dispensary

(District Print Depot t/a Lifted Life Smoke Shop) for several years. An illuminated "CBD" sign

in front of the building going to the basement signals that the "Basement" sells cannabis, and

another illuminated sign in the front of the Building show the entry to the "Basement."  Photos or

the inside and outside of the dispensary are posted on the internet to promote its location for the

sale of cannabis in interstate commerce.

108.    The Basement Adams Morgan Dispensary never had a cannabis retailer license issued by

ABCA (or DOH).  At all times it has operated as an illegal dispensary selling illegal cannabis.

None of the cannabis sold by this dispensary was cultivated or manufactured by licensed

cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this

location was illegal and was purchased in interstate commerce by the Basement Adams Morgan

Dispensary from unknown illegal sources in other states or foreign countries. Additionally, the

Basement Adams Morgan Dispensary relied on the use in interstate commerce of ATM and/or

POS debit and credit card processing to sell illegal cannabis in DC.

109.    The 1824 Columbia Property Owner never investigated or conducted any meaningful due

diligence review of the Basement Adams Morgan Dispensary before entering into a lease

because it knew that this dispensary was not licensed and would be involved in the sale of illegal

cannabis.  The 1824 Columbia Property Owner never took any other action to require the

Basement Adams Morgan Dispensary to cease selling illegal cannabis.  Additionally, the

property owner allowed the illegal dispensary to use the address (and photos) of the property to

be published in interstate commerce as the location source for illegal cannabis.

110.     The Basement Adams Morgan Dispensary promoted itself and advertised in interstate

commerce through its use of social media (Instagram (@the_basement_dc)), paid internet guides

to illegal cannabis dispensaries (Toker's Guide, Yelp, Leafy, Heresweed.com), various internet

postings and ads (Google Search, etc.) and its website (www.thebasementdc.com).  It used its

website to falsely promote itself as a legal dispensary in the District of Columbia that sold legal

cannabis products in DC or online, and to misrepresent the nature, characteristics, qualities, and

legality of the cannabis it sells to confuse or deceive consumers.

> The Basement is a Candle Boutique that is Initiative 71
> With cannabis gifting, residing in the fast paced corridors of
> Adams Morgan in Washington, DC.  We offer an array of
> cannabis strains, with pungent flavors and top shelf quality
> that will satisfy your euphoric needs.  Our tasty edibles have
> a vast dosage range for beginners to connoisseurs.

111.     Claims by unlicensed and illegal cannabis dispensaries to be "I-71" complaint is a false

attempt to misled the public into believing they are legal in DC and that their cannabis products

are also legally sold in DC. These claims are continually debunked by ABCA, and entities like

the Basement Adams Morgan Dispensary that make these false claims are falsely promoting and

advertising in an attempt to gain an unfair competitive advantage.

112.     Deceptively packaged cannabis from illegal sources are marketed by the Basement

Adams Morgan Dispensary as legal products to gain an unfair competitive advantage over

licensed dispensaries.

113.    On February 5, 2024, Plaintiff investigated the Basement Adams Morgan Dispensary and observed the display and sale of illegal cannabis.

114.    On June 13, 2024, ABCA's Supervisory Investigator investigated the Basement Adams Morgan Dispensary and found that it was engaged in illegal cannabis activities.  On the same date ABCA sent the 1824 Columbia Property Owner and the Basement Adams Morgan Dispensary warning to cease all illegal cannabis activities; however, there is no indication that sales of illegal cannabis have ceased at this location.

115.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were made by Basement Adams Morgan Dispensary.  The 1824 Columbia Property Owner materially contributed to the Basement Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1824 Columbia Property Owner in leasing its commercial space to the Basement Adams Morgan Dispensary (and allowing the publication in interstate commerce of the image and address of the property), the illegal cannabis sales by Basement Adams Morgan Dispensary would not have been made.

116.    The 1824 Columbia Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 3 years is $150,000 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 36 months).

117.    The Basement Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $1,500,000 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $375,000 (equaling 25% of estimated sales).

36

### F. 2439 18th PROPERTY OWNER – CAPSTERDAM ADAMS MORGAN DISPENSARY

118.   Defendant Mala Stieglitz Trustee ("2439 18th Property Owner") leased 1400 sf of

commercial space to Defendant Capsterdam University LLC t/a The Cannabis Bookstore

("Capsterdam Adams Morgan Dispensary") who operated an illegal cannabis dispensary at that

location.  According to Costar, the move-in date under the lease was March 1, 2021, and the

starting lease rate was $38.57/sf; ALCE used this lease rate in its calculation of the property

owner's profits.

119.   The 2439 18th Property Owner intentionally leased its commercial space for the sale of

illegal cannabis.  The 2439 18th Property Owner and illegal dispensary never applied for a

certificate of occupancy, and the illegal dispensary only obtained a general business license after

it moved into the property (400321809182). Both the property owner and illegal dispensary

sought to conceal from the DC Zoning Office the actual use of the premises by the dispensary.

120.   From outside the sign in the window reads "Join Us for Chess N. Cannabis Inside." Open

the front door of the building and from the foyer on the main level, the flight of steps up to the

dispensary are each printed on the side with names to signal cannabis is for sale at the end of the

stairs: "Flower, Green, 420, Cheeba, Broccoli, Ganja, Hydro, Pot, Reefer, Skunk, Wacky and

Yerba". As soon as you enter the dispensary you see the cannabis flower and other cannabis

products over in the display case.

121.   The Capsterdam Adams Morgan Dispensary does not have nor has it ever had a cannabis

retailer license issued by ABCA.  At all times it operated as an illegal dispensary selling illegal

cannabis. None of the cannabis sold by Capsterdam Adams Morgan Dispensary was cultivated or

manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently

all cannabis sold from this location was illegal and was purchased in interstate commerce by the

Capsterdam Adams Morgan Dispensary from unknown illegal sources in other states or foreign countries. Additionally, the Capsterdam Adams Morgan Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

122.    The 2439 18th Property Owner never investigated or conducted any meaningful due diligence review of the Capsterdam Adams Morgan Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis. The property owner never took any other action to require the Capsterdam Adams Morgan Dispensary to cease selling illegal cannabis. Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

123.    The Capsterdam Adams Morgan Dispensary falsely promoted and advertised in interstate commerce through its use of social media (Instagram@capsterdam), X (@capsterdam), Reddit), the use of paid sites to illegal dispensaries (Yelp), various internet postings and ads (Google Search and Yahoo, etc.), and its own website (www.bookstoredc.com). The Capsterdam Adams Morgan Dispensary uses the internet to represent itself as a legally licensed cannabis dispensary in DC:

> The Bookstore DC is the most reviewed and best I-71 dispensary in DC. Ease, safety, and discretion are our top concerns for your recreational gifting experience. No medical cards required.
>
> We offer the best weed gifts and are 100% I-71 complaint. If you haven't visited us, see why over 2000 people have written about us and had left 5-star reviews.

124.    Besides falsely representing itself as a legal cannabis dispensary in DC, the Capsterdam Adams Dispensary misrepresents the cannabis products it sells in the store and online as also

being legal for sale in DC. On its website it organizes a wide assortment of cannabis products in

categories it labels as $30 Gifts, $60 Gifts, $75+ Gifts and $100+ Gifts. The cannabis products it

offers to sell in these categories include Saliva, Indica and Hybrid flower, Vapes, a wide selection

of pre-rolls and edibles.

125.    Through its online menu and at its store the Capsterdam Adams Morgan Dispensary

offers a wide selection of illegal cannabis products that it misrepresents as being legal in DC in

order to undercut the perception of legal licensees as the only means of purchasing cannabis in

DC. None of these cannabis products offered for sale by the Capsterdam Adams Morgan

Dispensary are legal for sale in the District of Columbia. These products come from other states

or foreign countries and are not subject to any lab testing or quality controls. Offering these

products for sale in DC and presenting them as legal products here is intended to gain an unfair

competitive advantage over legal licensees by misrepresenting the nature, characteristics,

qualities, and legality of the cannabis sold by the illegal dispensary.

126.    On February 15, 2024, Plaintiff investigated the Capsterdam Adams Morgan Dispensary

and observed the display and sale of illegal cannabis. In September, 2024, the Capsterdam

Adams Morgan Dispensary ceased operations in response to raids on neighboring properties by

ABCA and the MDP.

127.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost

commercial sales that were made by Capsterdam Adams Morgan Dispensary. The 2439 18th

Property Owner materially contributed to the Capsterdam Adams Morgan Dispensary's

deception of consumers regarding its own legal status as well as the legal status under DC law of

the cannabis it is selling consumers. Without the material participation of the 2439 18th Property

Owner in leasing its commercial space to the Capsterdam Adams Morgan Dispensary (and

allowing the publication in interstate commerce of the image and address of the property), the illegal cannabis sales by Capsterdam Adams Morgan Dispensary would not have been made.

128.    The 2439 18th  Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 3 years (accounting for its apparent closure in September, 2024) is $143,994 (based on the applicable lease rate for this space multiplied by the square footage multiplied by  2 years/8 months—32 months that it was open).

129.    The Capsterdam Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years (accounting for its apparent closure in August, 2024) are conservatively estimated at $1,439,940 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $359,987 (equaling 25% of estimated sales).

### G.    2309 18TH PROPERTY OWNER – CAPITAL ADAMS MORGAN DISPENSARY

130.    Defendant LTL Investments LLC ("2309 18th Property Owner") leased 1200 sf of commercial space to Defendant Capital Remedy LLC aka House of Alternate Healing By Capital Remedy ("Capital Adams Morgan Dispensary") who operates an illegal dispensary at that location.  According to Costar, the estimated rent for this location is $49-$60/sf; ALCE used $60/sf in its calculation of the property owner's profits as the most likely rate under the factual circumstances of this lease for the sale of illegal cannabis.

131.    The dispensary never even obtained a general business license at this location, nor did the property owner or the dispensary apply for a Certificate of Occupancy.  Plaintiff found online photos from the Capital Adams Morgan Dispensary on the dispensary's Google page dated

December 8, 2023, indicating that it had been operating for at least 12 months, and is continuing

to operate as an illegal cannabis dispensary. The 2309 18th Property Owner's aggression in

pursuing the Capital Adams Morgan Dispensary as a lessee is further demonstrated by the fact

that the lease began before the dispensary was even organized as an LLC.

132.    The 2309 18th Property Owner intentionally leased its commercial space for the sale of

illegal cannabis and never investigated or conducted any meaningful due diligence review of the

Capital Adams Morgan Dispensary before entering into a lease because it knew that this

dispensary was involved in the sale of illegal cannabis.  Any person walking by the Capital

Adams Morgan Dispensary would immediately understand that cannabis was being sold inside.

An A-frame sign on the sidewalk indicated and "Exotic flower" was sold inside.  The 2309 18th

Property Owner was motivated to lease this space to it based on the knowledge that it would be

operating an unlicensed cannabis dispensary, and it assumed this risk.

133.    The Capital Adams Morgan Dispensary has never had a cannabis retailer license issued

by ABCA.  At all times it operated as illegal dispensary selling illegal cannabis. None of the

cannabis it sold was cultivated or manufactured by licensed cultivators or manufacturers in the

District of Columbia; consequently all cannabis sold from this location was illegal and was

purchased in interstate commerce by the Capital Adams Morgan Dispensary from unknown

illegal sources in other states or foreign countries.  Additionally, the Capital Adams Morgan

Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card

processing to sell illegal cannabis in DC.

134.    The Capital Adams Morgan Dispensary never took any action to require the Capital

Adams Morgan Dispensary to cease selling illegal cannabis.  Additionally, the property owner

allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

135.    The Capital Adams Morgan Dispensary falsely promotes and advertises in interstate commerce through its use of its website (www.capitalremedy.com), paid guides to illegal dispensaries (Toker's Guide), and various internet postings and ads (Google Search, MapQuest, etc.). The Capital Adams Morgan Dispensary uses the internet to represent itself as a legally licensed cannabis dispensary in DC, and the cannabis products it sells as legal in DC.  It's Google ad states:

> Ordering your cannabis should be easy and safe.  Customers should be able to trust their budtender to be reliable and honest.  We started Capital Remedy with the goal of becoming the DMV's most trusted source for the Highest quality of cannabis products in the area. I-71 Complaint.

136.    There is no such thing as being "I-71 compliant", and ABCB has found claims of this nature by unlicensed dispensaries to be false advertising.  Such claims are made to gain an unfair competitive advantage by trying to lessen the value and importance of having an actual license to operate legally in DC. On its website the Capital Adams Morgan Dispensary misstates the law to gain a competitive advantage:

> Q. Does Capital Remedy sell cannabis?
> A. No Capital Remedy does not sell cannabis—we gift it to customers who's valid state ID show them to be 21 years or age or older in accordance with Initiative 71 law we mention near the top of this page.

137.    Through its online menu and at its store the Capital Adams Morgan Dispensary offers a wide selection of illegal cannabis products, including various strains of flower, pre-rolls, edibles, cartridges, disposable vapes, concentrates. Among its products are Grammy-branded flower disposable vapes, concentrates, gummies, and pre-rolls. None of these cannabis products are legal for sale in the District of Columbia. These products come from other states or foreign

countries and are not subject to any lab testing or quality controls.  Offering these products for sale in DC and presenting them as legal products here is intended to gain an unfair competitive advantage over legal licensees.  The Capital Adams Morgan Dispensary uses the internet to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

138.    The website of the Capital Adams Morgan Dispensary contains the menu of cannabis products that the dispensary sells online and, in the dispensary, including CBD Broad Spectrum, CBD Full Spectrum, Connoisseur's Shelf (Flower)($100), District Rainbow ($50), Disposable Vapes, Special Shelf (flower), Standard Shelf(Flower), Top Shelf (flower), Cartridges, and Edibles.

139.    Deceptively packaged cannabis from illegal sources are marketed by the Capital Adams Morgan Dispensary as premium, legal products to gain an unfair competitive advantage over legally licensed dispensaries.

140.    On December 4, 2024, Plaintiff investigated the Capital Adams Morgan Dispensary and observed the display and sale of illegal cannabis.

141.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Capital Adams Morgan Dispensary.  The 2309 18th Property Owner materially contributed to the Capital Adams Morgan Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 2309 18h Property Owner in leasing its commercial space to the Capital Adams Morgan Dispensary (and allowing the publication of the image and address of the property), the illegal cannabis sales by Capital Adams Morgan Dispensary would not have been made.

142.    The 2309 18th Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 12 months is $72,000 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 12 months).

143.    The Capital Adams Morgan Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 12 months are conservatively estimated at $720,000 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $180,000 (equaling 25% of estimated sales).

**H.    1438 PARK PROPERTY OWNER – AK COLUMBIA HEIGHTS DISPENSARY**

144.    Defendant Patricia Yuk Yuen Trustee under the Patricia Yuen Life Insurance Trust ("1438 Park Property Owner") leased 1702 sf of commercial space to Defendant AK Tobacco & Grocery LLC ("AK Columbia Heights Dispensary") who operates an unlicensed and illegal cannabis dispensary within a smoke shop that also sells illegal flavored tobacco products at that location that is within ¼-mile of a middle or high school where the sale of any electronic smoking devices is also illegal under DC law.  According to Costar the estimated lease rate was between $42-$52/sf; ALCE use $52/sf in its calculations of the property owner's profits as the most likely rate under the factual circumstances of this lease involving the sale of illegal cannabis.

145.    The 1438 Park Property Owner intentionally leased its commercial space for the sale of illegal cannabis. The Cigarette Retail license (400321002335) issued more than 4 years ago (June 1, 2021) does not in any way authorize the sale of illegal cannabis, illegal flavored tobacco, or illegal electronic smoking devices.

146.    The AK Columbia Heights Dispensary never had a cannabis retailer license issued by ABCA.  At all times it has operated as an illegal dispensary selling illegal cannabis. None of the cannabis products sold by the dispensary were cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal and was purchased in interstate commerce by AK Columbia Height Dispensary from unknown illegal sources in other states or foreign countries.  Additionally, the AK Columbia Heights Dispensary relied on the use in interstate commerce of ATM and/or debit and credit card processing to sell illegal cannabis.

147.    The 1438 Park Property Owner never investigated or conducted any meaningful due diligence review of the AK Columbia Heights Dispensary before entering into a lease because it knew that this dispensary would selling illegal cannabis.  The 1438 Park Property Owner understood this and never took any other action to require AK Columbia Heights to cease selling illegal cannabis.  Additionally, the 1438 Park Property Owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

148.    Photos of the inside and outside of  the1438 Park Dispensary are displayed on its Google page showing the illuminated "CBD" sign in the storefront window and the display of drug paraphernalia all intended to promote and advertise both to walk-by traffic and on the internet that the store sold cannabis.

149.    On February 27, 2024, and again on November 18, 2024, Plaintiff investigated the AK Columbia Heights Dispensary and observed the display and sale of illegal cannabis.

150.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by AK Columbia Heights Dispensary.  The 1438 Park

Property Owner materially contributed to the AK Columbia Heights Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1438 Park Property Owner in leasing its commercial space to the AK Columbia Heights Dispensary (and allowing the publication of the image and address of the property), the illegal cannabis sales by AK Columbia Heights Dispensary would not have been made.

151.    The 1438 Park Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 3 years is $265,512 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 36 months) fully attributable to presence and availability of illegal cannabis and other illegal substitutable products.

152.    The AK Columbia Heights Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $2,655,120 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $663,780 (equaling 25% of estimated sales) of which 80% ($531,024) is estimated to be derived from the sale of illegal cannabis and other illegal substitutable products.

## I.      1426 PARK PROPERTY OWNER – LIT COLUMBIA HEIGHTS DISPENSARY

153.    Defendant Los Hermanos Inc. ("1426 Park Property Owner") leases 1,100 sf of commercial space to Defendant Lit City LLC ("Lit Columbia Heights Dispensary") who operates an illegal dispensary at that location within a ¼-mile of a middle or high school where the sale of all electronic smoking devices is further prohibited under DC law.  According to Costar the move-in date under the lease was January 4, 2019, and the estimated lease rate for this

commercial space was $44-$54/sf; ALCE used the $54/sf rate in its calculation of the property owners' profits as the most likely rate under the factual circumstances of this lease involving the sale of illegal cannabis.

154.    The 1426 Park Property Owner intentionally leases its commercial space for the sale of illegal cannabis.  It appears that the 1426 Park Property Owner has leased its property to unlicensed cannabis dispensaries for the last 10 years; starting in 2014 it leased to  well-known operators of multiple unlicensed, illegal cannabis dispensaries in DC (400314904402-General Business License issued 9/1/2014 (Ramon Roque); 400317001851-General Business License issued 6/1/2017 (Alvarez & Andrade LLC t/a Lit City Smoke Shop); 400318801959-General Business License issued 2/1/2018 (All American Papers LLC); 4003802404 – General Business License issued 2/1/2020 (American Legends); 400319002839- General Business License issued 9/1/2023 (Lit City LLC).  Both the property owner and dispensary sought to conceal from the DC Zoning Office the intended use of the property to operate as an unlicensed, illegal cannabis dispensary.  Once a person steps inside the dispensary it is apparent that only cannabis products are sold here.

155.    The Lit Columbia Heights Dispensary never had a cannabis retailer license issued by ABCA.  At all times it has operated as an illegal dispensary selling illegal cannabis. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal and purchased by Lit Columbia Height Dispensary in interstate commerce from unknown illegal sources in other states or foreign countries.  Additionally, the Lit Columbia Heights Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

156.    The 1426 Park Property Owner never investigated or conducted any meaningful due diligence review of the Lit Columbia Heights Dispensary (or any of the predecessor dispensaries that had been operating there for the past 10 years) before entering into a lease because it knew that this dispensary would be selling illegal cannabis and expected it to generate significant revenues. The dispensary was not hiding from the property owner the nature of its business.  The primary purpose of the dispensary is to sell illegal cannabis and the 1426 Park Property Owner understood this and never required the dispensary to cease selling it.  The property owner also allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source of illegal cannabis.

157.    The Lit Columbia Heights Dispensary falsely promotes itself and advertises in interstate commerce through its use of social media (Instagram (@litcitysmokeshop), Facebook (Lit City Smoke Shop), internet posting and ads (Google Search, Yahoo, Giftly, MapQuest, etc.), paid internet guides to illegal dispensaries (Yelp, Gentlemantoker, Foursquare.com, etc.), and its own websites—one for its storefront (www.litcitydc.com) an another for deliveries (www.litcity.delivery).  It claims on these internet postings that it is I-71 complaint as a fake claim that it is legal and its products are legal.

158.    The Lit Columbia Heights Dispensary falsely states on its various internet postings that it is i-71 complaint as part of its effort to falsely represent that it is a legal dispensary. These false representations are intended to gain a competitive advantage over the legal cannabis market by attempting to undermine the intended advantage of being a legal dispensary or cultivator in DC, and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

159.    On its website it has an extensive menu of cannabis products including Pre-rolls, flower, concentrates vaporizers, CBD, and Edibles (infused drinks, candies, gummies, and cookies). None of these products are legal under DC law.

160.    On February 27, 2024, and again on November 18, 2024, Plaintiff investigated the Lit Columbia Heights Dispensary and observed the display and sale of illegal cannabis.

161.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Lit Columbia Heights Dispensary.  The 1426 Park Property Owner materially contributed to the Lit Columbia Heights Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1426 Park Property Owner in leasing its commercial space to the Lit Columbia Heights Dispensary (and allowing the publication of the image and address of the property), the illegal cannabis sales by Lit Columbia Heights Dispensary would not have been made.

162.    The 1438 Park Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 3 years is $178,200 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 36 months).

163.    The Lit Columbia Heights Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $1,782,000 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $445,500 (equaling 25% of estimated sales).

**J.    335 H PROPERTY OWNER – SAFE H STREET DISPENSARY**

164.    Defendant H Street Development Group LLC ("335 H Property Owner") leased 900 sf of commercial space to Defendant The Safe House LLC ("Safe H Street Dispensary") who operated an illegal dispensary at that location within a ¼-mile of a middle or high school where the sale of all electronic smoking devices is prohibited under DC law.  On October 30, 2024, ABCA and MPD padlocked closed The Safe House Dispensary for its violation of previously issued Cease and Desist orders.  According to Costar the estimated lease rate for this space was $57-$70/sf; ALCE used $70/sf in its calculations of the property owner's profits as the most likely rate under the factual circumstances of this lease.

165.    The 335 H Property Owner intentionally leased its commercial space for use in the sale of illegal cannabis.  It appears that the 335 H Property Owner has been leasing to the Safe H Street Dispensary for the past 5 years based on photos of the dispensary posted to its Instagram account back to December 12, 2019.  A Certificate of Occupancy was never filed for by either the property owner or the dispensary.  The property owner and dispensary were both motivated to use this commercial space as an illegal cannabis dispensary.

166.    The Safe H Street Dispensary never had a cannabis retailer license issued by ABCA.  At all times, this dispensary operated as an  illegal dispensary selling illegal cannabis. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal and was purchased in interstate commerce by the Safe H Street Dispensary from unknown illegal sources in other states or foreign countries.  Additionally, the Safe H Street Dispensary relied on the use in interstate commerce of ATM and/or POS credit and debit card processing to sell illegal cannabis.

167.    The 355 H Property Owner never investigated or conducted any meaningful due diligence review of the Safe H Street Dispensary before entering into a lease because it knew that this dispensary was unlicensed and would be selling illegal cannabis. The dispensary was not hiding from the property owner the nature of its business.  The primary purpose of this unlicensed, illegal  dispensary was to sell illegal supplies of cannabis and the 355 H Property Owner understood this and never required the dispensary to cease selling it.  Additionally, the property owner allowed the dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

168.    The Safe H Street Dispensary promoted itself and its cannabis as legal in the District of Columbia to gain an unfair competitive advantage. It used social media (Instagram (@safehousecbdcenter), Facebook (Safe House DC), Reddit), paid internet guides to illegal dispensaries (Toker's Guide, Yelp), and various internet postings and ads (Google Search, MapQuest, etc.) to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sold to confuse or deceive consumers.

169.    On July 3, 2024, as amended July 17, 2024, the Alcoholic Beverage and Cannabis Board ("ABCB") issued its Order to Cease and Desist against the 355 H Property Owner; Mr. Abbas, the apparent owner of the 355 Property Owner; the Safe H Street Dispensary; and Ms. Margaret Villalobos and Mr. Marquis Childress, two persons associated with the Safe H Street Dispensary, ordering them "to cease the illegal purchase, sale, exchange, delivery, or other any other form of commercial transaction involving cannabis immediately."

170.    The two July, 2024 Cease and Desist Orders detail that on March 15, 2024, the ABCA's Supervisory Investigator (SI) and other District agencies inspected the Safe H Street Dispensary and during this inspection  the dispensary "was found to have engaged in the illegal sale and

distribution of cannabis infused edibles and drinks." In response, ABCA sent a warning letter on March 15,2024 to the property owner and the dispensary advising of violations regarding the illegal sale and distribution of cannabis.

171.    On June 27, 2024, the SI returned to the dispensary and upon further inspection determined the dispensary was continuing to sell cannabis.  Based on the evidence gathered, ABCB determined that the Safe H Street Dispensary was continuing to operate an unlicensed dispensary "engaged in the illegal sale and distribution of cannabis" at the 335 H Street NW property.

172.    The July 17th Cease and Desist Order "further notes that the sale and distribution of illegal cannabis immediately threatens the health and safety of the public because unregulated product because unregulated product may contain inappropriate and harmful substances (e.g., pesticides, other narcotics).  In addition, unlicensed businesses are at risk of selling to persons that should not have access to cannabis, such as minors."

173.    Despite the issuance of the July 17, 2024 Cease and Desist Order, the Safe H Street Dispensary refused to cease illegal cannabis activities and on August 8, 2024 ABCA reaffirmed its July 17 Cease and Desist Order. And, after continued violations of these Cease and Desist Order, on October 30, 2024, the MPD and ABCA padlocked closed this illegal dispensary, and confiscated illegal cannabis and other illegal products, including 11 lbs. of marijuana, 2lbs. of THC-laced edibles, 164 grams of entheogenic mushrooms, and 92 grams of entheogenic mushroom-laced edibles.

174.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by the Safe H Street Dispensary.  The 335 H Property Owner materially contributed to the Safe H Street Dispensary's deception of consumers

regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers. Without the material participation of the 335 H Property Owner in leasing its commercial space to the Safe H Street Dispensary (and allowing the publication of the image and address of the property), the illegal cannabis sales by the Safe H Street Dispensary would not have been made.

175.    The 335 H Street Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 3 years (accounting for the apparent closure on October 30, 2024) is $178,500 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 34 months).

176.    The Safe H Street Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years (accounting for the apparent closure on October 30, 2024) are conservatively estimated at $1,785,000 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales). This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $446,250 (equaling 25% of estimated sales).

### K.    825 UPSHUR PROPERTY OWNER and OTHER 825 UPSHUR PROPERTY OWNER – KARMA PETWORTH DISPENSARY

177.    Defendant Morris Center for Health & Wellness LLC ("825 Upshur Property Owner") and Defendant Kenneth D. Morris ("Other 825 Upshur Property Owner") leased 1000 sf of commercial space to Defendant Lifeluxee LLC t/a Cannabis Karma ("Karma Petworth Dispensary") who operated an unlicensed, illegal cannabis dispensary at that location within ¼-mile of a middle or high school where the sale of any electronic smoking devices is prohibited under DC law. According to Costar, the estimated rent for this location was $37-$45/sf; ALCE

used $45/sf in its calculations of the property owner's profits as the most likely rate under the factual circumstances of this lease involving the sale of illegal cannabis.

178.    Defendant Kenneth Morris ("Other 825 Upshur Property Owner") initially and intentionally leased this commercial space to the Karma Petworth Dispensary for use in the sale of illegal cannabis.  The Other 825 Upshur Property Owner started leasing the property to the Karma Petworth Dispensary on or about January 1, 2021, which is the date of the dispensary's general business license (400319000856) was issued.  The Other 825 Upshur Property Owner was motivated to lease the property for use as an unlicensed, illegal cannabis dispensary to obtain a higher lease rate, and after Defendant Morris transferred ownership of the property on November 21, 2023, to his LLC, the 825 Upshur Property Owner continued to lease to Karma Petworth Dispensary.  In the past 3 years (accounting for its closure on October 17, 2024 due to ABCA's Closure Order), the Other 825 Upshur Property Owner is responsible for the property for the initial 24-month period (December, 2021- November, 2023) and the 825 Upshur Property Owner is  responsible for the property for the subsequent 10 months (December, 2023-October, 2024 when ABCA issued its Closure Order).

179.    The property at 825 Upshur Street NW  has a large permanent sign across the top of the building proclaiming "Lifeluxee – Cannabis – Glass - Hemp".  The front window displays multiple "marijuana" signs and other signs that cannabis was sold inside.  It is obvious from simple visual observation that the leased property is used as a shop to sell cannabis.   The inside openly displays cannabis products.

180.    The  Karma Petworth Dispensary never had a cannabis retailer license issued by ABCA. At all times it has operated as an unlicensed, illegal dispensary selling illegal cannabis. None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or

manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal and purchased in interstate commerce by Karma Petworth Dispensary from unknown illegal sources in other states or foreign countries. Additionally, the Karma Petworth Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

181.    The 825 Upshur Property Owner never investigated or conducted any meaningful due diligence review of the Karma Petworth Dispensary before entering into a lease because it knew that this dispensary would be selling illegal cannabis and expected it to generate significant revenues. The dispensary was not hiding from the property owner the nature of its business.  The primary purpose of the dispensary is to sell illegal cannabis and the property owner understood this and never required the dispensary to cease selling it.

182.    The Karma Petworth Dispensary promotes itself and its cannabis products as legal in the District of Columbia to gain an unfair competitive advantage. It uses social media (Instagram (@lifeluxee_1), Facebook (Lifeluxee), Reddit), paid internet guides to illegal dispensaries (Yelp, AllBud, TrustedBud, Zaubee.com, Smokeshops.com), and various internet postings and ads (Google Search, MapQuest, Yahoo, TripAdvisor, etc.), and its own website (www.cannabiskarma.org) to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

183.    The website of the Karma Petworth Dispensary contains a large menu of  illegal cannabis products for sale online and at its store, including Mushrooms, Edibles (both THC and CBD— gummies, candies, etc.), Concentrates, Pre-rolls, Tinctures, Hashish, and Flower (Indica, Sativa and Hybrid strains).

184.    On February 5, 2024, Plaintiff investigated the Karma Petworth Dispensary and observed the display and sale of illegal cannabis.

185.    On March 27, 2024, the ABCA's Supervisory Investigator (SI) and other District agencies inspected the Karma Petworth Dispensary and during this inspection  the dispensary "was found to have engaged in illegal cannabis activity." In response, ABCA sent a warning letter on March 27, 2024 to the property owner and the dispensary advising of violations of the DC Code regarding the illegal sale and distribution of cannabis.

186.    On July 2, 2024, ABCA's Supervisory Investigator returned to the Karma Petworth Dispensary and found that the property owner and the illegal dispensary had continued to engage in illegal cannabis activities.

187.    On July 10, 2024, the Alcoholic Beverage and Cannabis Board ("ABCB") issued its Order to Cease and Desist against the Karma Petworth Dispensary, the 825 Upshur Property Owner, the owner and a manager of that unlicensed dispensary, and the owner of the Upshur Property Owner, ordering them "to cease the illegal purchase, sale, exchange, delivery, or other any other form of commercial transaction involving cannabis immediately."

188.    The July 10, 2024 Cease and Desist Order further details that on July 2, 2024, the SI returned to the dispensary and upon further inspection determined the dispensary was continuing to sell cannabis illegally and cited the DC laws relied upon and referenced several explanations by DC authorities:

> The District of Columbia Department of Health (DOH) previously advised in a 2018 guidance that "THC and CBD are legally considered Cannabis and hashish." *Letter from LaQuandra S. Nesbitt, Director, D.C. Department of Health,* at 2 (Jul. 31, 2018).  An opinion issued by the District of Columbia Office of the Attorney General in 2021, affirms DOH's position, and indicates that federal exemptions from hemp products did not legalize hemp derived CBD products in the District of Columbia.  *Legal Analysis – Whether CBD is Cannabis, District of Columbia Office of Attorney General,* AL-21-222, 2-3

(Apr. 28, 2021).  Likewise, under the same reasoning, other substances that
may be derived from hemp, such as Delta 8 THC, have also not currently
been legalized based on the reasoning provided in the memorandum.  See,
e.g. id. This means that under District law, products containing cannabis,
hemp-derived CBD, Delta 8 THC, or other substances derived from cannabis
or cannabis classified as hemp cannot be commercially sold in the District of
Columbia under the District of Columbia Uniform Controlled Substances Act
of 1981 (effective Aug. 5, 1981)(D.C. Official Code §48-901.02 et seq.) unless
an appropriate medical cannabis license is obtained, as such products remain
classified as cannabis or hashish.

189.    Based on the evidence gathered, ABCB determined that the Karma Petworth Dispensary,

its owner and manager, the 825 Upshur Property Owner, and its owner "operate an unlicensed

establishment  and engaged in the illegal sale and distribution of cannabis".

190.    The July 10, 2024 Cease and Desist Order "further notes that the sale and distribution of

illegal cannabis immediately threatens the health and safety of the public because unregulated

product because unregulated product may contain inappropriate and harmful substances (e.g.,

pesticides, other narcotics).  In addition, unlicensed businesses are at risk of selling to persons

that should not have access to cannabis, such as minors."

191.    Despite the issuance of the July 10, 2024 Cease and Desist Order, the Karma Petworth

Dispensary and the 825 Upshur Property Owner continued to be engaged in illegal cannabis

sales, and, on October 17, 2024, ABCA and the MPDC padlocked closed the illegal dispensary in

accordance with ABCB's closure order.

192.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost

commercial sales that were made by Karma Petworth Dispensary.  The Other 825 Upshur

Property Owner and the 825 Upshur Property Owner materially contributed to the Karma

Petworth Dispensary's deception of consumers regarding its own legal status as well as the legal

status under DC law of the cannabis it is selling consumers.  Without the material participation of

the 825 Upshur Property Owners in leasing its commercial space to the Karma Petworth

Dispensary (and allowing the publication in interstate commerce of the image and address of the

property), the illegal cannabis sales by Karma Petworth Dispensary would not have been made.

193.    The Other 825 Upshur Property Owner's profits for 24-month period he was responsible

for the property were $90,000, and the 825 Upshur Property Owner's profits from the lease of

this commercial space to an illegal dispensary in the past 10 month period after Defendant

Morris transferred to property to his LLC, was $37,500 (based on the applicable lease rate for

this space multiplied by the square footage multiplied by the number of months in operation).

194.    The Karma Petworth Dispensary's sales of illegal cannabis (diverted from the legal

market) over the past 3 years (accounting for the apparent closure on October 17, 2024) are

conservatively estimated at $1,275,000 (based on the reasonable business assumption that lease

costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods

(using a reasonable business assumption of 40%), rent and other expenses would result in

estimated profits of $318,750 (equaling 25% of estimated sales).

## L.    3232 GEORGIA PROPERTY OWNER – BUZZ PARK VIEW DISPENSARY

195.    Defendant Georgia Avenue Investments LLC ("3232 Georgia Property Owner") leased

1,100 sf of commercial space at 3232 Georgia Avenue NW, Condo Units 101 and 102,

Washington, DC 20010 to Defendant Apparel By Gold LLC t/a All the Buzz ("Buzz Park View

Dispensary") who operated an illegal dispensary at that location.  According to Costar, the rent

for this space was $39/sf; ALCE used this rate in its calculation of the property owner's profits as

the most likely rate.

196.    The 3232 Georgia Property Owner intentionally leased its commercial space for use in the sale of

illegal cannabis.  The 3232 Georgia Property Owner was leasing to the Buzz Park View Dispensary from at

least July 2, 2020 which is the date of the Certificate of Occupancy (CO2202474) issued for the commercial

space leased to the Buzz Park View Dispensary. The dispensary's trade name ("All the Buzz") and logo

("Bee") are plastered everywhere as a not so subtle reference to smoking cannabis as is the sign ("420") in

the window indicating cannabis is sold inside.

197.    The  Buzz Park View Dispensary never had a cannabis retailer license issued by ABCA.

At all times it operated as an illegal dispensary selling illegal cannabis. None of the cannabis

sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers

in the District of Columbia; consequently all cannabis sold from this location was illegal and

purchased in interstate commerce by the Buzz Park View Dispensary from unknown illegal

sources in other states or foreign countries.  Additionally, the Buzz Park View Dispensary relied

on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell

illegal cannabis in DC.

198.    The 3232 Georgia Property Owner never investigated or conducted any meaningful due

diligence review of the Buzz Park View Dispensary before entering into a lease because it knew

that this dispensary would be involved in the sale of illegal cannabis and expected it to generate

significant revenues. The dispensary was not hiding from the property owner the nature of its

business which was generally known to property owners.  The primary purpose of the dispensary

was to sell cannabis illegally and the 3232 Georgia Property Owner understood this and never

took any other action to require the dispensary to cease selling illegal cannabis. Additionally, the

property owner allowed the illegal dispensary to use the address (and photos) of the property to

be published in interstate commerce as the location source for illegal cannabis.

199.    The Buzz Park View Dispensary claims that it is a legal cannabis dispensary because it is

a "gifting" shop in compliance with Initiative 71that permits it to give away cannabis products in

conjunction with a transfer for remuneration for something else of nominal or no value. In the

FAQ section of its website (www.allthebuzz.com), the Buzz Park View Dispensary states:

> Q. Do you sell marijuana?
> A. No, it's illegal to sell marijuana in DC.  We are an apparel store
> And we gift in compliance with I-71.

200.    The Buzz Park View Dispensary promotes itself and its cannabis products as being legal

in the District of Columbia to gain an unfair competitive advantage. It uses social media

(Facebook (All the Buzz)), paid internet guides to illegal dispensaries (Toker's Guide, Yelp,

TrustedBud, Gentlemantoker, Luckietours.com, Adyp.com, etc.), and various internet postings

and ads (Google Search, MapQuest, etc.), and its own website (www.allthebuzz.com).   The

constant message that the Buzz Park View Dispensary delivers in interstate commerce is that it is

legal in DC, its cannabis products are legally sold under DC laws, it is I-71 complaint and in

some instances, it even asserts it is a "medical marijuana" smoke shop.  In its website it claims:

> <u>DC's Best Weed Delivery & Dispensary</u>
> We only carry hard to find exotic flower strains you can't find anywhere
> else.  If you're looking for fast DC weed delivery or a reliable dispensary
> where you don't need a medical marijuana card you are in the right place.
>
> All The Buzz is I-71 complaint dispensary, no appointments or medical
> marijuana card required!  Walk-ins are welcome.  Must be 21+ with valid ID.

201.    The website of the Buzz Park View Dispensary contains a menu of  illegal cannabis

products for sale online and at its store, including Mushrooms, Edibles (both THC and CBD—

gummies, candies, etc.), Concentrates, Pre-rolls, Tinctures, Hashish, and Flower (Indica, Sativa

and Hybrid strains). These cannabis products are presented for sale as if legal in DC.  The Buzz

Park View Dispensary uses the internet to falsely promote and advertise itself as a legal

dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it

sells to confuse or deceive consumers.

202.    On January 25, 2024, Plaintiff investigated the Buzz Park View Dispensary and observed the display of illegal cannabis products for sale.

203.    On July 10, 2024, the ABCB issued its Order to Cease and Desist against the Buzz Park View Dispensary, the owner of dispensary (James and Gina Goldring), and an entity it believed to be the property owner [5], ordering them "to cease the illegal purchase, sale, exchange, delivery, or other any other form of commercial transaction involving cannabis immediately."

204.    The July 10, 2024 Cease and Desist Order details that on May 16, 2024, the ABCA's Supervisory Investigator (SI) and other District agencies inspected the Buzz Park View Dispensary and during this inspection  the dispensary "was found to have engaged in illegal cannabis activity." In response, ABCA sent a warning letter on May 16, 2024 to the property owner and the dispensary advising of violations of the DC Code regarding the illegal sale and distribution of cannabis.

205.    The July 10, 2024 Cease and Desist Order further details that on July 2, 2024, the SI returned to the dispensary and upon further inspection determined the dispensary was continuing to sell cannabis illegally.

206.    Based on the evidence gathered, ABCB determined that the Buzz Park View Dispensary, its owners, and the entity it believed to be the property owner "operate an unlicensed establishment  and engaged in the illegal sale and distribution of cannabis."

207.    The July 10, 2024 Cease and Desist Order "further notes that the sale and distribution of illegal cannabis immediately threatens the health and safety of the public because unregulated product because unregulated product may contain inappropriate and harmful substances (e.g.,

---

[5] Plaintiff's research indicates that the 3232 Georgia Property Owner is the correct property owner at present.

pesticides, other narcotics).  In addition, unlicensed businesses are at risk of selling to persons

that should not have access to cannabis, such as minors."

208.    On July 24, 2024 ABCB lifted its Cease and Desist order based on "the testimony of the

ownership that they had ceased all cannabis, hemp, THC and CBD activity at the premises."

That was another misrepresentation, it has continued its purchase in interstate commerce of

illegal cannabis and sale of such in DC.

209.    On November 15, 2024, Plaintiff again investigated the Buzz Park View Dispensary and

observed the display and continued sale of illegal cannabis.

210.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost

commercial sales that were instead made by Buzz Park View Dispensary.  The 3232 Georgia

Property Owner materially contributed to the Buzz Park View Dispensary's deception of

consumers regarding its own legal status as well as the legal status under DC law of the cannabis

it is selling consumers.  Without the material participation of the 3232 Georgia Property Owner

in leasing its commercial space to the Buzz Park View Dispensary (and allowing the publication

of the image and address of the property), the illegal cannabis sales by Buzz Park View

Dispensary would not have been made.

211.    The 3232 Georgia Property Owner's profits from the lease of this commercial space to an

illegal dispensary in the past 3 years is $128,700 (based on the applicable lease rate for this space

multiplied by the square footage multiplied by 36 months).

212.    The Buzz Park View Dispensary's sales of illegal cannabis (diverted from the legal

market) over the past 3 years are conservatively estimated at $1,287,000 (based on the

reasonable business assumption that lease costs approximately equal 10% of retail sales).  This

level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $321,750 (equaling 25% of estimated sales).

## M. DEFENDANT GOLDRING

213.   Defendant James Goldring (Goldring") is the managing member of Defendant Apparel By Gold LLC ("Buzz Park View Dispensary") which on information and belief is a single member LLC.

214.   The Buzz Park View Dispensary is the business conduit for Defendant Goldring who directs and controls its unlicensed and illegal cannabis operations in the District of Columbia and its interstate purchase and distribution of illegal cannabis.

215.   There is a commingling of business records between Defendant Goldring and Buzz Park View Dispensary and no corporate veil should exist to insulate Defendant Goldring from the liability of Buzz Park View Dispensary.

## M. 1528 U PROPERTY OWNER – MASC U STREET DISPENSARY

216.   Defendants John S. Souliotis and Elli Souliotis ("1528 U Property Owner") leased 879 sf of commercial space in the building at 1528 U Street NW, Washington, DC 20009 to  Defendant Metropolitan Art & Sculpture Collaboration LLC t/a MASC ("MASC U Street Dispensary") who operated an unlicensed and illegal cannabis dispensary at this location within ¼-mile of a middle or high school where the sale of any electronic smoking devices is also illegal under DC laws. According to Costar, the estimated rent for this space was $44-$54/sf' ALE used $54/sf in its calculation of the property owner's profits as the most likely rate under the factual circumstances of this lease involving the sale of illegal cannabis.

217.   The 1528 U Property Owner intentionally leased its commercial space with complete knowledge that this commercial space would be used for the sale of illegal cannabis.  The 1528

U Property Owner leased this commercial space to the MASC U Street Dispensary as far back to 2018. The MASC U Street Dispensary was first organized in DC at this location on November 16, 2018, and on November 30, 2018 the 1528 U Property Owner obtained a Certificate of Occupancy (CO1900688) for the space to be leased for "reprints of Arts & Sculpture copy center", to conceal from the DC Zoning Office the intended use of the space for the sale of illegal cannabis.

218.    The MASC U Street Dispensary never had a cannabis retailer license issued by ABCA. At all times it has operated as illegal dispensary selling illegal cannabis.  None of the cannabis sold by the dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal and purchased in interstate commerce by the MASC U Street Dispensary unknown illegal sources in other states or foreign countries.  Additionally, the MASC U Street Dispensary relied on the use in interstate commerce of ATM and/or POS debit and credit card processing to sell illegal cannabis in DC.

219.    The 1528 U Property Owner never investigated or conducted any meaningful due diligence review of the dispensary before entering into a lease because it knew that the dispensary would be involved with the sale of illegal cannabis and expected it to generate significant revenues from illegal cannabis sales. The dispensary was not hiding from the property owner the nature of its business; and it appears that the property owner pursued the dispensary to become a tenant before it was even legally formed to operate.  The primary purpose of the dispensary was to sell cannabis products illegally and the 1528 U  Property Owner understood this and never took any other action to require the dispensary to cease selling illegal cannabis.

220.    The MASC U Street Dispensary falsely promotes itself and advertises its cannabis products in interstate commerce as being legal in DC through its use of social media (Instagram (@buymasc)), X (@masc.dc), Reddit), paid internet guides to illegal dispensaries (Toker's Guide, etc.), various internet postings and ads (Google Search, MapQuest, etc.), and its own website (www.buymasc.com). It used the internet to falsely promote itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

221.    On its website the MASC U Street Dispensary provides a menu of available cannabis products for ordering online for store pick-up. This menu includes flower, vapes, cartridges, concentrates, edibles, and pre-rolls. None of these products listed on this menu are legal in the District of Columbia just as MASC U Street Dispensary is itself unlicensed and illegal in DC.

222.    On February 7, 2024, Plaintiff investigated the MASC U Street Dispensary and observed the display and sale of illegal cannabis.

223.    On April 25, ABCA's investigators investigated the MASC U Street Dispensary and found it to be involved in illegal cannabis activities.

224.    On July 23, 2024, ABCA's investigators again investigated MASC U Street Dispensary and found it continued to be involved in illegal cannabis activities.

225.    On July 31, 2024, ABCB issued its Order to Cease and Desist against the MASC U Street Dispensary, the owner of the dispensary, and the 1528 U Property Owner, ordering them "to cease the illegal purchase, sale, exchange, delivery, or other any other form of commercial transaction involving cannabis immediately."

226.    The July 31, 2024, Cease and Desist Order details that on April 25, 2024, the ABCA's Supervisory Investigator (SI) and other District agencies inspected the MASC U Street

Dispensary and during this inspection determined that the dispensary "to have engaged in illegal cannabis activity." In response, ABCA sent a warning letter on April 25, 2024 to the property owner and the dispensaries advising of violations of the DC Code regarding the illegal sale and distribution of cannabis.

227.    The July 31, 2024 Cease and Desist Order further details that on July 23, 2024, ABCA inspectors returned to the dispensary and upon further inspection determined the dispensary was continuing to sell cannabis illegally. Based on the evidence gathered, ABCB determined that the MASC U Street Dispensary, its owner, and the 1528 U Property Owner, operate or allowed an unlicensed established to operate  and "engage in the illegal sale and distribution of cannabis".

228.    The July 31, 2024 Cease and Desist Order further found that the MASC U Street Dispensary was "selling cannabis products that may be especially appealing to children or using packaging or advertising that might be especially appealing to children" in violation of DC Code §7-1671.06b(a).

229.    The July 31, 2024 Cease and Desist Order "further notes that the sale and distribution of illegal cannabis immediately threatens the health and safety of the public because unregulated product because unregulated product may contain inappropriate and harmful substances (e.g., pesticides, other narcotics).  In addition, unlicensed businesses are at risk of selling to persons that should not have access to cannabis, such as minors."

230.    On October 9, 2024, ABCB reaffirmed its Cease and Desist Order and required the MASC U Street Dispensary and the 1528 U Street Property Owner to cease illegal cannabis activities.

231.    Deceptively packaged cannabis from illegal sources are marketed by MASC U Street Dispensary as premium, legal products to gain an unfair competitive advantage over legally

licensed dispensaries.  For example, as noted in ABCB's Cease and Cease order the MASC U Street Dispensary has been selling cannabis-infused lollypops packaged to look like "Dum-Dum" lollypops.

232.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by MASC U Street Dispensary.  The 1528 U Street Property Owner materially contributed to the MASC U Street Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1528 U Street Property Owner in leasing its commercial space to the MASC U Street Dispensary (and allowing the publication of the image and address of the property), the illegal cannabis sales by MASC U Street Dispensary would not have been made.

233.    The 1528 U Street Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 3 years (accounting for the assumption that illegal cannabis activities were ceased after issuance of ABCB's July 31, 2024 Cease and Desist Order) was $122,620 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 31 months).

234.    The MASC U Street Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years (accounting for cessation of illegal sales after July 31, 2024) are conservatively estimated at $1,226,205 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $306,551 (equaling 25% of estimated sales).

**N.    1338 U PROPERTY OWNER – FLIGHT U STREET DISPENSARY**

Case 1:24-cv-03501-LLA   Document 1   Filed 12/17/24   Page 68 of 106

235.    Defendant Jahanbin Management LLC ("1338 U Property Owner") leased 895 sf of commercial space to Defendant Flight Pass LLC ("Flight U Street Dispensary") who operated an illegal dispensary at that location within ¼-mile of a middle or high school where the sale of any electronic smoking device is also illegal under DC laws.  According to Costar, the estimated rent for this space was $44-$54/sf; ALCE used $54/sf in its calculations of the property owner's profits as the most likely rate under the fact4ual circumstances of this lease involving illegal cannabis sales.

236.    The 1338 U Property Owner intentionally leased its commercial space for the sale of illegal cannabis.  The 1338 U Property Owner appears to have begun leasing to the Flight U Street Dispensary on April 1, 2022, as confirmed by information posted on the dispensary's blog on its website.  The dispensary did not even get a general business license (400323000624) until January 1, 2023, and neither the property owner nor the dispensary ever applied for a Certificate of Occupancy.  The dispensary window has illuminated marijuana plant signs and one that states "I-71 Compliant" signaling that cannabis was sold inside; and inside the dispensary there is only the display of cannabis products indicating that these are the only products sold at this location.

237.    The Flight U Street Dispensary never had a cannabis retailer license issued by ABCA.  At all times it has operated as an illegal dispensary selling illegal cannabis. None of the cannabis products sold by the dispensary were cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis products that sold from this location were illegal and were purchased by the Flight U Street Dispensary in interstate commerce from unknown illegal sources in other states or foreign countries.  Additionally, the Flight U Street Dispensary relied on the use in interstate commerce of ATM and/or POS credit and credit card processing to sell illegal cannabis.

238.    The 1338 U Property Owner never investigated or conducted any meaningful due diligence review of the Flight U Street Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis and expected it to generate significant revenues. The dispensary was not hiding from the property owner the nature of its business.  The primary purpose of the dispensary is to sell cannabis and the 1338 U Property Owner understood this and never took any other action to require the dispensary to cease sales of illegal cannabis.  Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

239.    The Flight U Street Dispensary falsely promotes itself as being "I-71 Compliant" and advertises in interstate commerce through its use of social media (Tik Tok),  paid internet guides to illegal dispensaries (Toker's Guide, Yelp, Zaubee, etc.), various internet postings and ads (Google Search), and its own website (www.flightpassdc.com).  The Flight U Street Dispensary asserts that it is operating legally under DC law as a result of Initiative 71 and by extension its cannabis products are also legal. It used the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

240.    The original website for Flight U Street Dispensary listed cannabis products for sale in the dispensary, including flower, pre-rolls, concentrates and vapes, and stated "All items are free in compliance with I-71".  More recently, Flight U Street Dispensary has been taken over by The Green Room that operates a different unlicensed dispensary at 1936 11th Street NW, Washington, DC, and the www.flightpassdc.com website is directly linked now to The Green Room's website www.tgrflowers.com. And the breath of its false representations about I-71 are at another level:

> The Green Room is DC's go-to Initiative 71 shops. We are located in
> DC's historic U Street corridor and offer the best weed you can find
> across the district. Being an I71 shop also means under Initiative 71,
> we are able to give free weed gifts to both DC residents & tourists (no
> medical card needed)! All you need is a 21+ state-issued ID and cash
> payment. We offer 3 different methods of ordering:
> •In-store shopping
> •Preorder online (Chat with us on Whatsapp to preorder online)
> •Get it Delivered (Check out our delivery instructions here).

241.    The Flight Pass/Green Room's online cannabis menu is certainly more extensive than the

previous cannabis online menu of the original Flight U Street Dispensary. And not only does it

falsely represent its legal status, but it misrepresents the types of cannabis products sold in

licensed dispensaries (also originally known as medical dispensaries):

> Unlike other regions in the US where weed is legal, there are no
> recreational dispensaries in DC. Dispensaries in DC only sell
> medical weed. So only patients that have received a medical
> marijuana card from the state can buy and have access to medical
> marijuana.
> A medical marijuana card is like an ID card that allows access to
> a medical dispensary. But the fact is that a medical marijuana card
> often takes weeks to get. And this is why most DC residents opt for
> the recreational marijuana route.
> Another downside to medical marijuana is that it is primarily
> CBD-based. So unlike recreational marijuana, which contains
> the psychoactive THC, medical marijuana won't get you high.

242.    Notwithstanding the Flight U Street Dispensary's claims, ABCA has repeatedly found

claims of being I-71 compliant to be a violation of DC Code §7-1671.06(c-1). Such claims and

claims that its cannabis products are also legal constitute false advertising and are intended to

undercut licensed cultivators, manufactures and retailers in DC.

243.    On March 6, 2024, Plaintiff investigated the Flight U Street Dispensary and observed the

display and sale of illegal cannabis.

244.    On July 31, 2024, ABCB issued its Order to Cease and Desist against the Flight U Street

Dispensary, two individuals affiliated with the dispensary, the 1338 U Property Owner, and Mr.

Jahanbin (the owner of the 1338 U Property Owner), ordering them "to cease the illegal

purchase, sale, exchange, delivery, or other any other form of commercial transaction involving

cannabis immediately."

245.    The July 31, 2024 Cease and Desist Order details that on April 25, 2024, the ABCA's

Supervisory Investigator (SI) and other District agencies inspected the Flight U Street

Dispensary and during this inspection found the dispensary "to have engaged in illegal cannabis

activity." In response, ABCA sent a warning letter on April 25, 2024 to the property owner and

the dispensary advising of violations of the DC Code regarding the illegal sale and distribution of

cannabis.

246.    The July 31, 2024 Cease and Desist Order further details that on July 23, 2024, SI

returned to the dispensary and upon further inspection determined the dispensary was continuing

to sell cannabis illegally. Based on the evidence gathered, ABCB determined that the Flight U

Street Dispensary, its two employees, the 1338 U Property Owner and its owner, operate  an

unlicensed establishment "engaged in the illegal sale and distribution of cannabis" and further:

> [T]he amount and manner in which cannabis is displayed for sale to the
> public shows that the business engages in the commercial distribution of
> cannabis at 1338 U Street, N.W., without a license issued by ADCA. *Id.*
> Furthermore, the business possessed products and signage that claimed
> compliance with I-71 (§48-904.1(a)(1)) despite the prohibition on this type
> of false and misleading advertising. *Supra*, at ¶¶ 3-4.  The Board further
> notes that the business cannot be compliant with I-71 as advertised because
> a retail operation necessarily possesses more than 2 ounces of cannabis,
> and the listing of prices show that the transfer of cannabis is occurring with
> remuneration in violation of  § 48-904(a)(1).   It is also a violation of  the
> establishment's sandwich board to display the price of cannabis in violation
> of §7-1671.06b( e)(1); *supra*, at ¶ 3.

247.    The July 31, 2024 Cease and Desist Order "further notes that the sale and distribution of

illegal cannabis immediately threatens the health and safety of the public because unregulated

product because unregulated product may contain inappropriate and harmful substances (e.g., pesticides, other narcotics). In addition, unlicensed businesses are at risk of selling to persons that should not have access to cannabis, such as minors."

248.    On September 25, 2024, ABCA and the MPD padlocked closed the Flight U Street Dispensary because the illegal dispensary and the 1338 U Property Owner had ignored ABCB's Cease and Desist Order and had continued to sell illegal cannabis. According to ABCA, during the closure by ABCA and MPD, investigators recovered: "1458 grams of marijuana laced with amphetamines, 112.72 grams of THC-laced edibles, 1736 grams of THC wax, 11.65 grams of THC capsules, 9.8 grams of THC vapes cartridges, 11 grams of THC oil and 59 grams of Entheogenic mushrooms."

249.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Flight U Street Dispensary. The 1338 U Property Owner materially contributed to the Flight U Street Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers. Without the material participation of the 1338 U Property Owner in leasing its commercial space to the Flight U Street Dispensary (and allowing the publication of the image and address of the property), the illegal cannabis sales by Flight U Street Dispensary would not have been made.

250.    The 1338 U Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 3 years (accounting for closure on September 25, 2024) were $120,825 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 30 months).

251.    The Flight U Street Dispensary's sales of illegal cannabis (diverted from the legal

market) over the past 3 years (accounting for closure on September 25, 2024) are conservatively

estimated at $1,208,250 (based on the reasonable business assumption that lease costs

approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a

reasonable business assumption of 40%), rent and other expenses would result in estimated

profits of $302,062 (equaling 25% of estimated sales).

### O.    1936 11th PROPERTY OWNER - GREEN U STREET DISPENSARY

252.    Defendants Aklile B. Gebrewold and Enkenyelesh D. Desta ("1936 11th Property

Owner") lease their commercial space to Defendant The Green Room #1, LLC ("Green U Street

Dispensary") who operates an illegal cannabis dispensary at that location within ¼-mile of a

middle or high school where the sale of any electronic smoking device is also illegal under DC

laws.  According to Costar, the estimated rent for this location is $45-$55/sf; ALCE used $54/sf

in its calculation of the property owner's profits as the most likely rate under the factual

circumstances of this lease.

253.    The 1936 11th Property Owner intentionally leased this commercial space for the sale of

illegal cannabis.  Based on internet posting on Google regarding the Green U Street Dispensary,

it appears that the dispensary has been at that location since at least August, 2019.  The 1936 11th

Property Owner  was motivated to lease this space to the Green U Street Dispensary to operate as

an unlicensed and illegal dispensary in order to obtain higher lease rates and it was fully aware

that the intended activity was illegal and it knew the consequences of its actions.

254.    The Green U Street Dispensary does not have nor has it ever had a cannabis retailer

license issued by ABCA.  At all times it operated as an illegal dispensary selling illegal cannabis.

None of the cannabis sold by the Green U Street Dispensary was cultivated or manufactured by

licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal in DC and was purchased in interstate commerce by the Green U Street Dispensary from unknown illegal sources in other states or foreign countries. Additionally, the Green U Street Dispensary relied on the use in interstate commerce of ATM and/or POS credit and debit card processing to sell illegal cannabis in DC.

255.    The 1936 11th Property Owner never investigated or conducted any meaningful due diligence review of the Green U Street Dispensary before entering into a lease because it knew that this dispensary was involved in the sale of illegal cannabis. The 1936 11th Property Owner never took any other action to require the Green U Street Dispensary to cease selling illegal cannabis. Additionally, the property owner allowed the illegal dispensary to use the address (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis.

256.    At night, the Green U Street Dispensary floods the outside of the building in green light so it is easy to spot. There are also the illuminated "I-71 Compliant" and marijuana plant signs in the front window advertising that cannabis is sold inside.

257.    The Green U Street Dispensary promotes itself and advertises in interstate commerce through the use of social media (Instagram (@greenroom1936), Facebook (The Green Room/ Washington, DC) paid guides to illegal cannabis dispensaries (Yelp, Toker's Guide, TrustedBud.com, Foursquare, etc.), internet postings and ads (Google, Yahoo, MapQuest, Giftly, Where.com. Smokeopedia.com, etc.), and its own website (www.tgrmenu.com). Throughout its internet presence, the Green U Street Dispensary constantly claims that it is a "Initiative-71 Compliant Gift Shop. Its website is used to spread false information that "I-71 Compliant" means it can legally sell cannabis in DC:

It's been nearly eight years since DC residents overwhelming approved the use of recreational weed in the capital. And since then, several DC weed laws have been put in place to help monitor the distribution of weed across the district.

These laws often make it hard for weed lovers in the capital to acquire weed. However, there is a way to bypass these laws legally. And for you to do that, you have to understand how DC weed laws work.

***

With the success of Initiative 71, DC residents were allowed to use and possess marijuana for recreational purposes. However, there was still a catch; recreational weed could not be sold anywhere in the district.

This problem still persists today and has left many cannabis lovers pondering, "If you can't buy weed in DC, how are we supposed to get it? The fix is pretty simple. You can find many services in DC that will gift you marijuana for, let's say a donation.

***

Unlike other regions in the US where weed is legal, there are no recreational dispensaries in DC. Dispensaries in DC only sell medical weed. So only patients that have received a medical marijuana card from the state can buy and have access to medical marijuana.

A medical marijuana card is like an ID card that allows access to a medical dispensary. But the fact is that a medical marijuana card often takes weeks to get. And this is why DC residents opt for the recreational marijuana route.

Another downside to medical marijuana is that it is primarily CBD-based. So unlike recreational marijuana, which contains the psychoactive marijuana won't get you high.

258. Claims by an unlicensed cannabis dispensary like the Green U Street Dispensary to be "i-71" Compliant" have been repeatedly rejected by the DC Government, and ABCA has found that assertions of being I-71 complaint constitutes false advertising and in violation of DC Code. There is no such thing as a commercial retailer in the District of Columbia being "i71 compliant" because there is no such thing as a commercial retailer being allowed to "gift" cannabis. There are no unlicensed, legal "recreational" dispensaries in DC, there are just licensed, legal dispensaries, which are often referred in DC and in other states that allow legal access to cannabis, as medical dispensaries. Not only is the Green U Street dispensary unlicensed but the

cannabis products it sells are also illegal in DC and cannot be sold by legal, licensed dispensaries. These products come from other states or foreign countries and are not subject to any lab testing or quality controls.

259.    On its website the Green U Street Dispensary has five separate cannabis menus for each category of cannabis it stocks for sale: Flower, Concentrates, Edibles, Pre-Rolls, and Cartridges. Each product it claims is "in compliance with I-71 in DC".  These statements are meant to falsely represent the legal nature of the products it sells. The Green U Street Dispensary uses the internet to falsely promote and advertise itself as a legal dispensary and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

260.    On March 6, 2024, Plaintiff investigated the Green U Street Dispensary and observed the display and sale of certain cannabis products.

261.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Green U Street Dispensary.  The 1936 11th Property Owner materially contributed to the Green U Street Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 1936 11th Property Owner in leasing its commercial space to the Green U Street Dispensary (and allowing the publication of the image and address of the property), the illegal cannabis sales by Green U Street Dispensary would not have been made.

262.    The 1936 11th Property Owner's profits from the lease of this commercial space to an illegal dispensary in the past 3 years is $199,815 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 36 months).

263.    The Green U Street Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $1,998,150 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $499,537 (equaling 25% of estimated sales).

### P.    1202 H PROPERTY OWNER – NOMAD H STREET DISPENSARY

264.    Defendant 1200 H Street NE Partnership ("1202 H Property Owner") lease 1468 sf of commercial retail space to Hatlast LLC t/a Nomad ("Nomad H Street Dispensary") who operates an illegal cannabis dispensary inside a Smoke Shop that also sell a wide variety of illegal flavored tobacco products.  In addition, since the Nomad H Street Dispensary is located within a ¼-mile of a middle or high school it is also illegal for it to sell (as it does) electronic smoking devices, including any vapes for nicotine or cannabis. According to Costar, the estimated rent for this space was $33-$41/sf; ALCE used $41/sf in its calculations of the property owner's profits as the most likely rate under the factual circumstances of this lease involving the sale of illegal cannabis.

265.    The 1202 H Property Owner leased this property to the Nomad H Street Dispensary knowing that it would sell tobacco, nicotine, and cannabis products, but never required the dispensary to obtain a cannabis retailer license.  The dispensary obtained a retail license for the sale of cigar products and accessories (CO1601067) on February 10, 2016, when it opened but never applied for a cannabis license.  Both the property owner and the dispensary ignored the legal requirements because they sought to obtain commercial sales for the illegal cannabis sold in the store without ever even applying for a retailer license to sell cannabis.

266.    As a Smoke Shop and illegal dispensary, the Nomad H Street Dispensary misrepresented itself as being legally authorized to sell all smoking products and devices in order to confuse or deceive consumers. The property owner never attempted to require the illegal dispensary to cease selling illegal cannabis or illegal, flavored tobacco or electronic smoking devices which attracted consumers to the store to purchase a wide variety of products without knowing that the products were illegal in DC and the dispensary was not licensed to sell them.

267.    The 1202 H Property Owner never investigated or conducted any meaningful due diligence of the Nomad H Street Dispensary before entering into a lease because it knew that this dispensary was not licensed and could be involved in the sale of illegal cannabis.  The 1202 H Property Owner never took any action to determine whether the Nomad H Street Dispensary had the legal right to sell cannabis or for that matter vapes of any kind.  The property owner should have been particularly attuned to the location of his building within a ¼-mile of a middle or high school, but it never sought to prevent the sale of electronic smoking devices at the dispensary. To the contrary, the property owner allowed Nomad H Street Dispensary to use the address of the property (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis and flavored tobacco vapes.

268.  The Nomad H Street Dispensary does not have nor has it ever had a cannabis retailer license issued by ABCA (or its predecessor agency, the Department of Health).  At all times it has operated as an unlicensed dispensary. None of the cannabis sold by this dispensary was cultivated or manufactured by licensed cultivators or manufacturers in the District of Columbia; consequently all cannabis sold from this location was illegal and was purchased by Nomad H Street Dispensary in interstate commerce from unknown illegal sources from other states or

foreign countries. Additionally, the Nomad H Street Dispensary relied on the use in interstate commerce of its POS debit and credit card processing system to sell illegal cannabis in DC.

269.    The Nomad H Street Dispensary extensively promotes itself and advertises in interstate commerce through its use of social media (TikTok (@nomadcigarsshop), Facebook (Nomadshopdc), Instagram), paid internet guides to illegal dispensaries (Cannapages, Headypages.com, Roadtrippers.com, etc.) , numerous internet postings and ads (Google, Yelp, Yahoo, MapQuest), and its website (www.nomadshopdc.com).  It used the internet to falsely promote and advertise itself as a legal smoke shop with the legal authorization to sell all smoking devices and paraphernalia and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

270.    The Nomad H Street Dispensary is part of a small chain of smoke shops selling a wide variety of illegal flavored tobacco and cannabis products in DC.

271.    A wide variety of deceptively packaged cannabis from illegal sources and flavored tobacco are marketed by the Nomad H Street Dispensary as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.  The deception of a smoke shop is particularly great because consumers are generally unaware that flavored tobacco products are completely illegal in DC (versus only being available in certain smoke shops), and consumers are unable generally to distinguish what cannabis products are legal or illegal in DC.

272.    On February 28, 2024 , and November 29, 2024, Plaintiff investigated the Nomad H Street  Dispensary and observed the display and sale of illegal cannabis, flavored tobacco, and electronic smoking devices.

273.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Nomad H Street Dispensary.  The 1202 H Property

Owner materially contributed to the Nomad H Street Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers. Without the material participation of the 1202 H Property Owner in leasing its commercial space to the Nomad H Street Dispensary, the illegal cannabis sales by Nomad H Street Dispensary would not have been made.

274. The 1202 H Property Owner's lease revenues/profits from the lease of this commercial space to an illegal dispensary in the past 3 years were $180,564 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 36 months) fully attributable to the presence and availability of illegal cannabis and other illegal substitutable products.

275. The Nomad H Street Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $1,805,640 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales). This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $451,410 (equaling 25% of estimated sales) of which 80% ($361,128) is estimated to be derived from the sale of illegal cannabis and other illegal substitutable products.

## Q. 2026 MLK AVE. PROPERTY OWNER – NOMAD ANACOSTIA DISPENSARY

276. Defendant Hue Thi Nguyen ("2026 MLK Ave. Property Owner") leases 1800 sf of commercial space to MLKNOMAD Corp. t/a Nomad ("Nomad Anacostia Dispensary") who operates an illegal cannabis dispensary within a smoke shop that also sells illegal flavored tobacco products. According to Costar, the actual starting rate under this lease was $16.67/sf: ALCE used this rate in its calculations of the property owner's profits.

277.    The 2026 MLK Ave. Property Owner has been leasing its commercial space to the

Nomad Anacostia Dispensary since at least January 7, 2020 when the property owner obtained a

Certificate of Occupancy (CO2000953) for the property to be used for a Retail Tobacco Shop.

278.    Neither the property owner nor Nomad Anacostia Dispensary ever applied to the

Department of Health (or its successor agency, ABCA) for a license to operate a medical

marijuana dispensary at this location.  Nomad Anacostia Dispensary's ongoing and misleading

representations to consumers that it has legal authorization in DC to operate a cannabis

dispensary has always been intended to deceive consumers.  Furthermore, the owner of the

property was fully aware that no license was ever issued by the Department of Health or ABCA

for the Nomad Anacostia dispensary to sell cannabis at this location.

279.    The Nomad Anacostia Dispensary does not have nor has it ever had a cannabis retailer

license which means that it has always operated as an unlicensed dispensary. None of the

cannabis sold by this dispensary was cultivated or manufactured by licensed cultivators or

manufacturers in the District of Columbia; consequently all cannabis sold from this location was

illegal and was purchased by Nomad Anacostia Dispensary in interstate commerce from

unknown illegal sources from other states or foreign countries. Additionally, the Nomad

Anacostia Dispensary relied on the use in interstate commerce of its POS debit and credit card

processing system to sell illegal cannabis in DC.

280.    The 2026 MLK Ave. Property Owner never investigated or conducted any meaningful

due diligence of the Nomad Anacostia Dispensary before entering into a lease because it knew

that this dispensary was not licensed to sell cannabis and could never qualify to get one of the

limited number of cannabis licenses being issued since it is adjacent to an already legally

licensed dispensary.   The 2026 MLK Ave. Property Owner never took any action to prevent the

Nomad Anacostia Dispensary from selling cannabis from its property.  To the contrary, the property owner allowed Nomad Anacostia Dispensary to use the address of the property (and photos) of the property to be published in interstate commerce as the location source for illegal cannabis and flavored tobacco vapes.

281.    Although part of a 3-store chain of smoke shops also selling illegal cannabis, it appears that each store promotes and advertises separately and this is the reason that the Nomad stores have three separate accounts for Facebook, Instagram, Yelp, Yahoo, Google, etc. The Nomad Anacostia Dispensary extensively promotes itself and advertises in interstate commerce through its own use of social media, paid internet guides to illegal dispensaries (Cannapages, Roadtrippers.com, etc.) , and numerous internet postings and ads (Google, Yelp, Yahoo, MapQuest), although the three stores appear to share one website (www.nomadshopdc.com).  It uses the internet to falsely promote and advertise itself as a legal smoke shop with the legal authorization to sell drug paraphernalia, flavored tobacco, and illegal cannabis, and to misrepresent the nature, characteristics, qualities, and legality of the cannabis it sells to confuse or deceive consumers.

282.    The wide variety of deceptively packaged cannabis from illegal sources and flavored tobacco are marketed by the Nomad Anacostia Dispensary as premium, legal products to gain an unfair competitive advantage over licensed dispensaries.  The deception of a smoke shop is particularly great because consumers are generally unaware that flavored tobacco products are completely illegal in DC (versus only being available in certain smoke shops), and consumers are unable generally to distinguish what cannabis products are legal or illegal in DC.

283.    On November 29, 2024, Plaintiff investigated the Nomad Anacostia Dispensary and observed the display and sale of illegal cannabis and flavored tobacco.

284.    The legal cannabis market in DC and ALCE members suffered damages as a result of lost commercial sales that were instead made by Nomad Anacostia Dispensary.  The 2026 MLK Ave. Property Owner materially contributed to the Nomad Anacostia Dispensary's deception of consumers regarding its own legal status as well as the legal status under DC law of the cannabis it is selling consumers.  Without the material participation of the 2026 MLK Ave. Property Owner in leasing its commercial space to the Nomad Anacostia Dispensary, the illegal cannabis sales by Nomad Anacostia Dispensary would not have been made.

285.    The 2026 MLK Ave. Property Owner's lease revenues/profits from the lease of this commercial space to an illegal dispensary in the past 3 years were $90,018 (based on the applicable lease rate for this space multiplied by the square footage multiplied by 36 months) fully attributable to the presence and availability of illegal cannabis and other illegal substitutable products.

286.    The Nomad Anacostia Dispensary's sales of illegal cannabis (diverted from the legal market) over the past 3 years are conservatively estimated at $900,180 (based on the reasonable business assumption that lease costs approximately equal 10% of retail sales).  This level of sales, minus the cost of goods (using a reasonable business assumption of 40%), rent and other expenses would result in estimated profits of $225,045 (equaling 25% of estimated sales) of which 80% ($180,036) is estimated to be derived from the sale of illegal cannabis and other illegal substitutable products.

**COUNT I – LIABILITY FOR VIOLATION OF LANHAM ACT FOR UNFAIR COMPETITION**

287.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 286 above.

288.    Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) provides:

(a)    Civil Action:

(1)    Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or in any false designation or origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

 shall be liable in a civil action by any person who believes that he or she is or is likely to  be damaged by such act.

289.    Defendants SADC LLC t/a Gifted Curators and ZTMS Partners t/a Gifted Curators

("Gifted Adams Morgan Dispensary"), Bmore Tobacco Outlet LLC t/a Grass & Co. ("Grass

Adams Morgan Dispensary"), ECCS LLC t/a Heady Club ("Heady Adams Morgan

Dispensary"), The Basement LLC ("Basement Adams Morgan Dispensary"), Capsterdam

University LLC ("Capsterdam Adams Morgan Dispensary"), Capital Remedy LLC t/a House of

Alternative Healing ("Capital Adams Morgan Dispensary"),  AK Tobacco & Grocery LLC ("AK

Columbia Heights Dispensary"), Lit City LLC ("Lit Columbia Heights Dispensary"), The Safe

House LLC ("Safe H Street Dispensary"), Lifeluxee LLC t/a Cannabis Karma ("Karma Petworth

Dispensary"), Apparel By Gold LLC t/a All the Buzz DC ("Buzz Park View Dispensary"),

Metropolitan Art & Sculpture Collaboration LLC t/a MASC ("MASC Adams Morgan

Dispensary"), Flight Pass LLC ("Flight U Street Dispensary"), The Green Room #1, LLC

("Green U Street Dispensary"), Hatlast LLC t/a Nomad ("Nomad H Street Dispensary"), and

MLKNOMAD Corp. t/a Nomad ("Nomad Anacostia Dispensary") (hereinafter collectively

referred to as "Sixteen Illegal Dispensary-Defendants") each engaged in unfair competition

against the legally licensed cannabis entities in violation of Section 43(a)(1)(A) of the Lanham Act.

290.    Each of the Sixteen Illegal Dispensary-Defendants falsely claim or represent in interstate commerce that the "origin" of the cannabis it sells (or sold) is cultivated or manufactured in the District of Columbia by licensed cultivators and/or manufactured because those licensees are the only source of legal cannabis under the laws of the District of Columbia.  None of the cannabis sold by any of the Sixteen Illegal Dispensaries had as its "origin" any of the licensed cultivators and/or manufacturers in the District of Columbia. The false or misleading representations as to the "origin" of the cannabis sold by the Sixteen Illegal Dispensary-Defendants violate Section 43(a)(1) of the Lanham Act.

291.    Each of the Sixteen Illegal Dispensary-Defendants falsely describe or give false or misleading representations in interstate commerce as to the cannabis they sell (sold) "to cause confusion, or to cause mistake, or to deceive" consumers "as to the origin, sponsorship, or approval" of the District of Columbia Government (through ABCA) in violation of Section 43(a)(1)(A) of the Lanham Act.

292.    Each of the Sixteen Illegal Dispensary-Defendants falsely describe or make false or misleading descriptions of facts or false or misleading representations of fact in interstate commerce as to their own legal status to sell cannabis in the District of Columbia "to cause confusion, or to cause mistake, or to deceive" consumers as to the unlicensed dispensary's "affiliation, connection, or association … as to the origin, sponsorship, or approval of his or her goods, services, or commercial  activities" by licensed dispensaries in violation of Section 43(a)(1)(A) of the Lanham Act.

293.    Each of the Sixteen Illegal Dispensary-Defendants operate or operated in the past three years an illegal cannabis dispensary selling illegal cannabis flower and other cannabis products while simultaneously misrepresenting to customers (both in person and on the internet) that they were legally licensed or legally authorized in the District of Columbia to sell cannabis.  These misrepresentations were made to deceive consumers to gain an unfair competitive advantage over licensed dispensaries who sold legal cannabis from licensed cultivators and manufacturers.

294.    Each of the Sixteen Illegal Dispensary-Defendants used the internet to deceive consumers in interstate commerce as to their legal status by claiming they were licensed or "i-71 compliant" or otherwise legally authorized to operate as a cannabis shop or dispensary and to sell or  "gift" cannabis to consumers in accordance with the laws of the District of Columbia.

295.    Without such misrepresentations and deceptions aimed at consumers, none of the Sixteen Illegal Dispensary-Defendants would have been able to make inroads into the cannabis market in the District of Columbia.

296.    Each of the Sixteen Illegal Dispensary-Defendants deceived consumers (both in person and on the internet) by representing that the cannabis flower and other cannabis products they sold were legal in the District of Columbia.

297.    None of the cannabis flower and other cannabis products sold by the Sixteen Illegal Dispensary-Defendants in their stores, listed on their websites, or sold online was legal under the laws of the District of Columbia.

298.    Each of the Sixteen Illegal Dispensary-Defendants sells illegal cannabis that is deceptively packaged as a premium product to deceive consumers to gain an unfair competitive advantage over legal dispensaries who are prohibited from purchasing and selling illegal cannabis.

299.    Each of the Sixteen Illegal Dispensary-Defendants deceived consumers into purchasing cannabis that is illegal under the laws of the District of Columbia.

300.    Some of the Sixteen Illegal Dispensary-Defendants also sell "magic mushrooms" (the common street name for the "psilocybin" found in entheogenic plants and fungi) and magic mushroom products like chocolates as a substitutable product for cannabis.  These dispensaries misrepresent the magic mushrooms and products they sell as being legal in DC and only available as "premium" products available at certain (albeit illegal) dispensaries.  These representations are false and are intended to deceive consumers to encourage their shopping with illegal dispensaries and divert sales from the legal market represented by ALCE.

301.    Some of the Illegal Dispensary-Defendants also sell illegal flavored tobacco products, including nicotine vapes (*e.g.,* Grass Adams Morgan Dispensary, AK Columbia Heights Dispensary, Nomad H Street Dispensary, and Nomad Anacostia Dispensary), and/or "magic" mushrooms as complementary "buzz" products that consumers may view as substitutable for cannabis.  By offering an additional product mix not available from licensed cannabis dispensaries , these unlicensed and illegal dispensaries seek to gain an unfair competitive advantage.

302.    At least ten of  the Illegal Dispensary-Defendants (Grass Adams Morgan Dispensary, Capital Adams Morgan Dispensary, AK Columbia Heights Dispensary, Lit Columbia Heights Dispensary, Safe H Street Dispensary, Karma Petworth Dispensary, Buzz Park View Dispensary, MASC U Street Dispensary, Flight U Street Dispensary, and Nomad H Street Dispensary) also sell electronic smoking devices for  cannabis within ¼-mile of middle or high schools without regard to the prohibition of such sales under DC's Flavored Tobacco Prohibition Amendment Act

of 2021.  These illegal dispensaries do so to deceive or confuse consumers as to the legality of the products they sell.

303.    Commercial sales of illegal cannabis flower and other cannabis products by these illegal dispensaries competed with commercial sales of the legal cannabis by legal, licensed dispensaries in the District of Columbia and diverted commercial sales from the legal cannabis market, causing commercial injury to licensed cultivators, manufacturers and dispensaries represented by ALCE.

304.    In accordance with 15 U.S.C. §1117(a), Plaintiff  seeks equitable relief equal to disgorgement of the profits of the Sixteen Illegal Dispensary-Defendants for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for violation of the Lanham Act for unfair competition.

**COUNT II – CONTRIBUTORY LIABILITY FOR VIOLATION OF LANHAM ACT FOR UNFAIR COMPETITION**

305.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 304 above.

306.    Defendants DDK Properties LLC ("2469 Property Owner"),  Insurance USA LLC ("1730 Columbia Property Owner"), Jose Jacinto Rivera and Maria A. Rivera ("1648 Columbia Property Owner"), Manuel C. Solloso ("1624 Columbia Property Owner"), Mala Stieglitz Trustee ("2439 18th Property Owner"), LTL Investments LLC ("2309 18th Property Owner"), Patricia Yuk Yuen Trustee under the Patricia Yuen Life Insurance Trust ("1438 Park Property Owner"), Los Hermanos Inc. ("1426 Park Property Owner"), H Street Development Group LLC ("335 H Property Owner"), Morris Center for Health & Wellness LLC ("825 Upshur Property Owner"),

Kenneth D. Morris ("Other 825 Upshur Property Owner"), Georgia Avenue Investments LLC ("3232 Georgia Property Owner"), John S. Souliotis and Elli Souliotis ("1528 U Property Owner"), Jahabin Management LLC ("1338 U Property Owner"), Aklile Gehrewold and Enkenyelesh D. Desta ("1936 11th Property Owner"), George Eugene Murray d/b/a 1200 H Street Northeast Partnership ("1202 H Property Owner"), and Hue Thi Nguyen ("2026 MLK Ave, Property Owner") (hereinafter collectively referred to as "Seventeen Property Owner-Defendants") are each individually contributorily liable for violation of Section 43(a)(1)(A) of the Lanham Act for unfair competition.

307.    Each of the Seventeen Property Owner-Defendants leased commercial space to unlicensed cannabis dispensaries which allowed such illegal dispensaries to falsely claim or represent that they were legal or licensed cannabis dispensaries in a manner "likely to cause confusion, or to cause mistake, or to deceive" consumers as to the legal status in the District of Columbia of the unlicensed dispensaries in violation of Section 43(a)(1)(A) of the Lanham Act.

308.    Each of the Seventeen Property Owner-Defendants leased commercial space to unlicensed cannabis dispensaries which allowed the use of the commercial space and the address of such commercial space to be used to sell illegal cannabis which was "likely to cause confusion, or to cause mistake, or to deceive" consumers  "as to the origin, sponsorship, or approval of" this illegal cannabis, or the legality of the other related services offered by unlicensed dispensaries, including access to credit or debit cards, and shipping and delivery of illegal cannabis in interstate commerce.

309.    Each of the Seventeen Property Owner-Defendants materially participated in the establishment of operations of one or more of the Sixteen Illegal Dispensary-Defendants by

leasing commercial space to them for the sale of illegal cannabis. These defendants materially participated with the illegal dispensary-defendants in violations of Section 43(a)(1)(A).

310.    Each of the Seventeen Property Owner-Defendants leased space in commercial properties they owned to unlicensed and illegal cannabis dispensaries.

311.    Each of the Seventeen Property Owner-Defendants had knowledge of or had reason to know that the Sixteen Illegal Dispensary-Defendants were unlicensed and sold illegal cannabis flower and other cannabis products, and in several instances, illegal flavored tobacco products and/or "magic" mushrooms, at their respective leased locations to gain an unfair competitive advantage.

312.    Eleven of the commercial properties leased to the Sixteen Illegal Dispensary-Defendants by the Seventeen Property Owner-Defendants are located within ¼-mile of a middle or high school in DC where the sale of all electronic smoking devices are prohibited under DC law. Those Property Owner-Defendants had knowledge of or had reason to know that the Illegal Dispensary-Defendants that they leased to sold prohibited vapes and other illegal cannabis and nicotine products to deceive or confuse consumers.

313.    Each of the Seventeen Property Owner-Defendants was aware (or should have been aware) that consumers were deceived as to the legal status of the illegal dispensary-defendants, and the legality of the cannabis and, in certain cases, flavored tobacco and/or "magic" mushrooms, sold at these illegal dispensaries.

314.    Each of the Seventeen Property Owner-Defendants materially contributed to the deception and/or confusion of consumers by providing one or more illegal dispensaries with the appearance of legitimacy by leasing commercial property to the illegal dispensary.

315.    None of the Seventeen Property Owner-Defendants required any of the illegal dispensaries to become a legal, licensed dispensary, and only sell cannabis that was legal under the laws of the District of Columbia.

316.    "Willful blindness" of any of the Seventeen Property Owner-Defendants does not excuse their liability for violation of the Lanham Act for contributory unfair competition.

317.    The actions of each of these Seventeen Property Owner-Defendants caused injury to the legal cannabis market represented by ALCE in the form of commercial cannabis sales diverted from the legal market to the illegal market.  Without the participation of the Seventeen Property Owner-Defendants, the illegal dispensaries would not have been able to operate and sell illegal cannabis flower and other cannabis products.

318.    Each of the Seventeen Property Owner-Defendants acted as competitors to the legal cannabis market by their actions in leasing commercial space to illegal dispensaries to compete with the legal market for cannabis sales.

319.    The lease payments received by each of the Seventeen Property Owner-Defendants was paid with revenues from the commercial sale of illegal cannabis diverted from the legal cannabis market in DC.

320.    Where lease payments to a Property Owner-Defendant included a percentage of revenues from illegal cannabis sales, this additional direct participation indicates an even closer involvement of the property owner as a partner in the illegal sale and distribution of illegal cannabis.

321.    In accordance with 15 U.S.C. §1117(a), Plaintiff  seeks equitable relief with the disgorgement of the profits of the Seventeen Property Owner-Defendants for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to

the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for violation of the Lanham Act for unfair competition.

**COUNT III – LIABILITY FOR VIOLATION OF LANHAM ACT FOR FALSE ADVERTISING AND FALSE PROMOTION**

322.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 321 above.

323.    Each of the Sixteen Illegal Dispensary-Defendants engaged in false advertising competition in violation of Section 43(a)(1)(B) of the Lanham Act.

324.    Each of the Sixteen Illegal Dispensary-Defendants falsely describe or give false or misleading descriptions of fact or misleading representations of fact in interstate commerce as to the cannabis they sell.  Each make such misrepresentations on the internet regarding the nature, characteristics, qualities, or geographic origin of the cannabis they sell in violation of Section 43(a)(1)(B) of the Lanham Act.

325.    Each of the Sixteen Illegal Dispensary-Defendants falsely describes or gives false or misleading descriptions of fact or misleading representations of fact as to the cannabis sold by legal, licensed dispensaries in violation of Section 43(a)(1)(B) of the Lanham Act.

326.    Each of the Sixteen Illegal Dispensary-Defendants used the internet to falsely advertise and promote themselves in interstate commerce as legal dispensaries in the District of Columbia that sold only legal cannabis flower and other cannabis products. These claims along with misleading packaging of  illegal cannabis was intended to confuse and deceive consumers.

327.    Each  of the Sixteen Illegal Dispensary-Defendants used the internet to falsely advertise and promote illegal cannabis and illegal dispensaries in interstate commerce.

328.    Each of the Sixteen Illegal Dispensary-Defendants advertises and promotes in interstate commerce the sale of some type of illegal cannabis, e.g., CBD, THC, hemp-derived, Delta 8, etc.

329.    Advertising claims by the Sixteen Illegal Dispensary-Defendants that any of these cannabis types are legally sold by an unlicensed retailer in DC are intended to confuse or deceive consumers.

330.    Each of the Sixteen Illegal Dispensary-Defendants sells some nationally marketed cannabis brands as a premium product concealing the fact that all such cannabis products produced outside of the District of Columbia, purchased, and transported in interstate commerce by the illegal dispensary-defendants, and are illegal in DC;

331.    Many of the nationally marketed cannabis brands are deceptively packaged with inaccurate potency statements, misrepresent the safety of the products, fail state the lack of third-party testing or governmental oversight or fail to give any information as to the actual cultivator or manufacturer.  The Sixteen Illegal Dispensary-Defendants withhold this information to deceive or confuse consumers about the cannabis they are selling illegally.

332.    Some of the Sixteen Illegal Dispensary-Defendants also sell cannabis deceptively packaged to look like non-cannabis, national consumer brands to confuse or deceive consumers and gain a competitive advantage over the legal market, e.g., Nerd Robes, Skittles, Chips Ahoy, Milky Way, Snickers, Dean & Deluca, Doritos, etc.

333.    Many of the Sixteen Illegal Dispensary-Defendants offer to deliver illegal cannabis products in interstate commerce outside of the District of Columbia into Maryland and Virginia and falsely represent such delivery options as being safe and legal.  Legal dispensaries in the District of Columbia are prohibited from making deliveries in interstate commerce outside of the District of Columbia.

334.    Some of the Sixteen Illegal Dispensary-Defendants falsely advertise and promote the sale in interstate commerce on their websites and in their stores of "magic" mushrooms that they also represent as being legal in DC for them to sell. Legal, licensed cannabis dispensaries in the District of Columbia are prohibited from selling 'magic" mushrooms which are illegal for everyone to sell in the District of Columbia.

335.    Some of the Illegal Dispensary-Defendants also sell illegal flavored tobacco products that are national brands, including nicotine vapes, that are heavily advertised in interstate commerce. The inclusion of these brands in the product mix of an illegal dispensary help to promote the illegal dispensary/smoke shops in a manner intended to confuse or deceive consumers.

336.    Eleven of the Illegal Dispensary-Defendants also sell electronic smoking devices within ¼-mile of middle or high schools and seek to increase their sales by offering heavily advertised brands even though illegal in DC.

337.    Each of the Sixteen Illegal Dispensary-Defendants have (or had) an internet presence that they used in interstate commerce to confuse or deceive consumers about the illegal cannabis they advertised for sale.

338.    Each of the Sixteen Illegal Dispensary-Defendants has or had websites and uses the internet to promote in interstate commerce the sale at their leased locations and online of illegal cannabis products that they falsely represented to be legal in the District of Columbia, laboratory tested and high quality.

339.    Each of the Sixteen Illegal Dispensary-Defendants falsely advertised and falsely promoted in interstate commerce claims intended to deceive consumers as to the legal status of the different cannabis products and the legal status of the unlicensed dispensary itself.

340.    Each of the Sixteen Illegal Dispensary-Defendants concealed from consumers the fact that they were not licensed by ABCA and used the internet to advertise in interstate commerce and promote itself as operating as a legal dispensary.

341.    None of the cannabis sold by any of the Sixteen Illegal Dispensary- Defendants can be legally sold by any retailer in DC, even licensed dispensaries are prohibited from selling such products that are not cultivated and manufactured by licensed cultivators and manufacturers in DC in accordance with ABCA regulations.

342.    False claims as to the legality and nature of the illegal cannabis flower and other cannabis products falsely advertised and falsely promoted and sold in interstate commerce by the Sixteen Illegal Dispensary-Defendants reduced commercial sales in the legal cannabis market in the District of Columbia and caused damage to the licensed cultivator, manufacturers and dispensaries represented by ALCE.

343.    In accordance with 15 U.S.C. §1117(a), Plaintiff  seeks equitable relief equal to disgorgement of the profits of the Sixteen Illegal Dispensary-Defendants for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary complete cessation of illegal cannabis sales) for violation of the Lanham Act for false advertising and false promotion.

**COUNT IV – CONTRIBUTORY LIABILITY FOR VIOLATION OF LANHAM ACT FOR FALSE ADVERTISING AND FALSE PROMOTION**

344.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 343 above.

345.    Each of the Seventeen Property Owner-Defendants is liable for violation of Section 43(a)(1)(B) of the Lanham Act for contributory false advertising and promotion.

346.    Each of the Seventeen Property Owner-Defendants leased commercial space to unlicensed cannabis dispensaries which allowed such illegal dispensaries to advertise and promote in interstate commerce their presence and the sale of illegal cannabis at that location which allowed the misrepresentation of the nature, characteristics, qualities, or geographic origin of the cannabis sold by the illegal dispensaries in violation of Section 43(a)(1)(B) of the Lanham Act.

347.    Each of the Seventeen Property Owner-Defendants also permitted their property to be used to advertise or promote in interstate commerce the sale of illegal cannabis in DC with signage of illegal cannabis sales attached to the building property and photos of the building and signage posted on the internet, along with the address (as a location source for illegal cannabis) and directions to the property in violation of Section 43(a)(1)(B) of the Lanham Act.

348.    Each of the Seventeen Property Owner-Defendants had knowledge of or had reason to know that the Sixteen Illegal Dispensary-Defendants was advertising and promoting in interstate commerce the sale of illegal cannabis flower and other cannabis products sold from their leased premises.  These defendants materially participated in the illegal dispensary-defendants' violations of Section 43(a)(1)(B) of the Lanham Act.

349.    "Willful blindness" of these seventeen defendants does not excuse their liability for violation of the Lanham Act for contributory false advertising and false promotion.

350.    Each of the Seventeen Property Owner-Defendants signed (or was responsible for signing) leases with the Sixteen Illegal Dispensary-Defendants.  They entered into these leases with knowledge that the lease payments made to them would be based on the sale of illegal cannabis  falsely advertised and promoted in interstate commerce by the sixteen illegal dispensary-defendants.

351.    Each of the Seventeen Property Owner-Defendants caused injury to the legal market by intentionally leasing to illegal dispensaries that they knew or should have known were selling illegal cannabis and diverting commercial sales from the legal cannabis market and causing damage to the licensed cultivators, manufacturers and dispensaries represented by ALCE.

352.    Each of the Seventeen Property Owner-Defendants had access to the leased premises that displayed illegal cannabis flower and other cannabis products that were being falsely advertised and promoted in interstate commerce with the support of these defendants. Without the knowing involvement and participation of these seventeen defendants, the illegal dispensaries would not have been able to operate by falsely advertising and promoting in interstate commerce the sale of illegal cannabis.

353.    None of the Seventeen Property Owner-Defendants as a condition of the lease or otherwise required the illegal dispensary to obtain a legal cannabis license or to refrain from ever selling illegal cannabis.

354.    None of the Seventeen Property Owner-Defendants ever took any action to cause the illegal dispensary to cease advertising and promoting the sale from their leased premises of illegal cannabis.

355.    In accordance with 15 U.S.C. §1117, Plaintiff seeks equitable relief equal to disgorgement of the Seventeen Property Owner-Defendants' profits for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date of the complete cessation of all illegal cannabis sales from the leased premises) for the violation of the Lanham Act for contributory false advertising and promotion.

**COUNT V – VIOLATION OF COMMON LAW IN THE DISTRICT OF COLUMBIA FOR UNFAIR COMPETITION**

356.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 355 above.

357.    Common law of Unfair Competition in the District of Columbia recognizes a party's liability to a competitor where the offending party used methods that were independently illegal or where the offending party used false advertising or deceptive packaging.

358.    Each of the Sixteen Illegal Dispensary-Defendants engaged in unfair competition by: (i) selling of cannabis in the District of Columbia without being licensed as a cannabis retailer by ABCA; (ii) selling illegal cannabis flower and other cannabis products not cultivated or manufactured by licensed cultivators and manufacturers in DC; (iii) falsely advertising the cannabis they sold as legal, safe, and from legal sources; and (iv) selling cannabis in deceptive packaging as a premium product that licensed dispensaries cannot sell under the laws of the District of Columbia.  Additionally, some of the Sixteen Illegal Dispensary-Defendants sold other illegal "buzz" products partially substitutable for cannabis, such as "magic" mushrooms and flavored tobacco products to confuse or deceive consumers to gain an unfair competitive advantage over licensed dispensaries.

359.    Each of the Seventeen Property Owner-Defendants materially participated in the establishment and operation of an illegal cannabis dispensary by leasing commercial space to the illegal dispensaries knowing (or have reason to know) of their intent to sell illegal cannabis flower, and other cannabis products.  Where a Property Owner-Defendant received a percentage of the illegal dispensaries' revenues from the sale of illegal cannabis, that Property Owner-Defendant itself functioned as an illegal dispensary.

360.    The legal cannabis market was injured as a direct result of the unfair competition of the illegal dispensaries and the contributory unfair competition of the property owner-defendants. The legal cannabis market was injured by the commercial sales diverted from the sale of legal cannabis in the District of Columbia.

361.    Plaintiff  seeks equitable relief equal to disgorgement of the profits of the Defendants for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for violation of the common law in the District of Columbia for unfair competition and false advertising.

## COUNT VI – LIABILITY FOR NEGLIGENCE IN OPERATING ILLEGAL CANNABIS DISPENSARIES SELLING ILLEGAL CANNABIS AND CANNABIS PRODUCTS

362.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 361 above.

363.    Each of the Sixteen Illegal Dispensary-Defendants owed a duty of care to the legal cannabis market (composed of the licensed cultivators, manufacturers, and retailers) in the District of Columbia to apply for and obtain a legal license from ABCA before selling any cannabis in the District of Columbia.

364.    Foreseeability of  injury to the legal cannabis market is apparent where a party engages in the illegal sale of cannabis without obtaining a legal license and ignoring the laws in the District of Columbia regarding what cannabis is consider legal for sale in DC and what entities are legally authorized to sell such legal cannabis. If a dispensary is not licensed to sell cannabis flower and other cannabis products to consumers in the District of Columbia then it is not authorized to purchase legally cultivated cannabis flower and other legally manufactured

cannabis products.  By selling illegal cannabis flower and other cannabis products it was foreseeable that the legal cannabis market would be injured by the diversion of commercial sales and profits to the illegal cannabis market.

365.    Each of the Sixteen Illegal Dispensary-Defendants breached its duty of care to the legal cannabis market in failing to become licensed and in selling illegal cannabis flower and other cannabis products to consumers in the District of Columbia.

366.    The breach of their respective individual duties of care by these defendants is the proximate cause for the legal cannabis market's injury.  These defendants knew or should have known that their actions would cause injury to the legal cannabis market as represented by ALCE.

367.    The legal cannabis market was injured by each of the Sixteen Illegal Dispensary-Defendants' breach of their individual duty of care by the diversion of commercial sales from the legal cannabis market to the illegal cannabis market.  ACLE seeks equitable relief through the disgorgement of the profits of the Sixteen Illegal Dispensary-Defendants for the harm caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this complaint or (2) the date the illegal dispensary began operations through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for their negligence in the breach of their duty to the legal cannabis market represented by ALCE.

**COUNT VII – LIABILITY FOR NEGLIGENCE IN BREACH  OF DUTY OF DUE DILIGENCE IN ALLOWING ILLEGAL CANNABIS DISPENSARIES TO OPERATE**

368.    Plaintiff incorporates by reference and restates here the assertions and allegations in Paragraphs 1 through 367 above.

369.    Each of the Seventeen Property Owner-Defendants owed a duty of care to the legal cannabis market in the District of Columbia to exercise due diligence in the leasing of commercial property so as not to lease to unlicensed and illegal cannabis dispensaries.

370.    The foreseeability of injury to the legal cannabis market is apparent where commercial property is leased to unlicensed cannabis dispensaries that have no access to legal cannabis supplies, and the property location is promoted as the location source for illegal cannabis in DC.

371.    The duty of care owed by these defendants to the legal cannabis market required them to engage in due diligence to know their tenants and their proposed use of the premises.  The exercise of reasonable due diligence would have prevented leasing the properties to any of these illegal dispensaries.

372.    Furthermore, at any time after leasing to the illegal dispensaries, the property owner defendants could have easily determined that illegal cannabis was being sold at these storefronts and taken action to close down such illegal operations but chose not to do so.

373.    The storefronts of the illegal dispensaries declare on the outside that they sell cannabis. All of the illegal dispensaries make clear that they sell a wide assortment of illegal cannabis flower and other cannabis products.  Even a casual observer would be able to identify any of these dispensaries as selling cannabis—and even a minimal amount of due diligence on behalf of the property owners would have disclosed that each of the Sixteen Illegal Dispensary-Defendants was unlicensed and operating illegally.

374.    Each of the Seventeen Property Owner-Defendants breached their duty of care to the legal cannabis market by failing to exercise due diligence and in leasing to unlicensed dispensaries, and later in continuing to lease to these unlicensed dispensaries.

375.    The breach of their respective individual duties of care by each of the Seventeen Property Owner-Defendants is the proximate cause for the legal cannabis market's injury – the loss of commercial sales to the illegal cannabis market. These defendants knew or should have known that their actions would cause commercial sales injury to the legal cannabis market.

376.    The legal cannabis market was injured by the Seventeen Property Owner-Defendants' breach of their duty of care by the diversion of commercial sales to the illegal cannabis market. ACLE seeks equitable relief equal to disgorgement of the Seventeen Property Owner-Defendants' profits for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this complaint or (2) the date the illegal dispensary began operations through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for their negligence in the breach of their duty to the legal cannabis market represented by ALCE.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests the Court find in in its favor on all the allegations and claims against the Defendants and order the following equitable relief:

A.    Issue a permanent injunctive order against all Sixteen Illegal Dispensary-Defendants immediately requiring that they cease and desist the purchase and sale of (i) all cannabis not cultivated and/or manufactured by cultivators and/or manufacturers licensed by ABCA in accordance with the laws of the District of Columbia, and (ii) flavored tobacco products specifically prohibited by the DC Flavored Tobacco Prohibition Act of 2021.

B.    Issue a permanent injunctive order against all Seventeen Property Owner-Defendants immediately requiring that they take immediate action to shut down and evict any illegal

dispensary-defendant who does not demonstrate the existence of a verifiable cannabis retailer license issued by ABCA, and prohibit each of the Seventeen Property Owner-Defendants from leasing in the future to an entity or individual that sells illegal cannabis, magic mushrooms, or illegal flavored tobacco products or any electronic smoking device within ¼-mile of a middle or high school in the District of Columbia.

C.      Issue an order granting equitable relief to Plaintiff disgorging the profits of the Sixteen Illegal Dispensary-Defendants (SADC LLC t/a Gifted Curators and ZMTS Partners LLC t/a Gifted Curators ("Gifted Adams Morgan Dispensary"), Bmore Tobacco Outlet LLC t/a Grass & Co. ("Grass Adams Morgan Dispensary"), ECCS LLC t/a Heady Club ("Heady Adams Morgan Dispensary"), Capsterdam University LLC ("Capsterdam Adams Morgan Dispensary"), Capital Remedy LLC t/a House of Alternative Healing ("Capital Adams Morgan Dispensary"), The Basement LLC ("Basement Adams Morgan Dispensary"), AK Tobacco & Grocery LLC ("AK Columbia Heights Dispensary"), Lit City LLC ("Lit Columbia Heights Dispensary"), The Safe House LLC ("Safe H Street Dispensary"), Lifeluxee LLC t/a Cannabis Karma ("Karma Petworth Dispensary"), Apparel By Gold LLC t/a All the Buzz DC ("Buzz Park View Dispensary"), Metropolitan Art & Sculpture Collaboration LLC t/a MASC ("MASC Adams Morgan Dispensary"), Flight Pass LLC ("Flight U Street Dispensary"), The Green Room #1, LLC ("Green U Street Dispensary"), Hatlast LLC t/a Nomad ("Nomad H Street Dispensary"), and MLKNOMAD Corp. t/a Nomad ("Nomad Anacostia Dispensary") for the harm they caused ALCE members and the legal cannabis market from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal dispensary began operations, through the date of judgment in this case (or the date the illegal dispensary ceased all illegal cannabis sales) for violation of the Lanham Act for unfair competition and false advertising, violation of DC

common law against unfair competition, and negligence in selling illegal cannabis without a license issued by ABCA, equal to, not less than, the following profits through December 31, 2024, to be updated as appropriate through the date of judgment:

1.    For Gifted Adams Morgan Dispensary- $484,492
2.    For Grass Adams Morgan Dispensary- $222,007
3.    For Heady Adams Morgan Dispensary- $356,557
4.    For Basement Adams Morgan Dispensary- $375,000
5.    For Capsterdam Adams Morgan Dispensary-$359,987
6.    For Capital Adams Morgan Dispensary-$180,000
7.    For AK Columbia Height Dispensary-$531,024
8.    For Lit Columbia Heights Dispensary-$445,500
9.    For Safe H Street Dispensary-$446,250
10.   For Karma Petworth Dispensary-$318,750
11.   For Buzz Park View Dispensary-$321,750
12.   For MASC U Street Dispensary- $306,551
13.   For Flight U Street Dispensary- $302,062
14.   For Green U Street Dispensary- $499,537
15.   For Nomad H Street Dispensary- $361,728
16.   For Nomad Anacostia Dispensary- $180,036

D.    Issue an order granting equitable relief to Plaintiff disgorging the profits of the Seventeen Property Owner-Defendants (DDK Properties LLC ("2469 Property Owner"),  Insurance USA LLC ("1730 Columbia Property Owner"), Jose Jacinto Rivera and Maria A. Rivera ("1648 Columbia Property Owner"), Manuel C. Solloso ("1624 Columbia Property Owner"), Mala Stieglitz Trustee ("2439 18th Property Owner"), LTL Investments LLC ("2309 18th Property Owner"), Patricia Yuk Yuen Trustee under the Patricia Yuen Life Insurance Trust ("1438 Park Property Owner"), Los Hermanos Inc. ("1426 Park Property Owner"), H Street Development Group LLC ("335 H Property Owner"), Morris Center for Health & Wellness LLC ("825 Upshur Property Owner"), Kenneth D. Morris ("Other 825 Upshur Property Owner"), Georgia Avenue Investments LLC ("3232 Georgia Property Owner"), John S. Souliotis and Elli Souliotis ("1528 U Property Owner"), Jahabin Management LLC ("1338 U Property Owner"), Aklile Gehrewold and Enkenyelesh D. Desta ("1936 11th Property Owner"), George Eugene Murray d/b/a 1200 H

Street Northeast Partnership ("1202 H Property Owner"), and Hue Thi Nguyen ("2026 MLK

Ave. Property Owner") for the harm they caused ALCE members and the legal cannabis market

from the earlier of (1) three years prior to the filing of this Complaint or (2) the date the illegal

dispensary began operations, through the date of judgment in this case (or the date the illegal

dispensary ceased all illegal cannabis sales) for violation of the Lanham Act for contributory

unfair competition and false advertising, violation of DC common law against unfair

competition, and negligence in allowing illegal cannabis to be sold by unlicensed dispensaries

from commercial properties owned by the Seventeen Property Owner-Defendants, equal to, not

less than, the following profits through November 30, 2024, to be updated as appropriate through

the date of judgment:

1.      For 2469 18th Property Owner- $193,979
2.      For 1730 Columbia Property Owner-$98,670
3.      For 1648 Columbia Property Owner-$142,623
4.      For 1824 Columbia Property Owner-$150,000
5.      For 2439 18th Property Owner-$143,994
6.      For 2309 Property Owner-$72,000
7.      For 1438 Park Property Owner-$265,512
8.      For 1426 Park Property Owner-$178,200
9.      For 335 H Property Owner-$178,500
10.(i)  For 825 Upshur Property Owner-$37,500
10.(ii) For Other 825 Upshur Property Owner-$90,000
11.     For 3232 Georgia Property Owner-$128,700
12.     For 1528 U Property Owner-$122,620
13.     For 1338 U Property Owner-$120,825
14.     For 1936 11th Property Owner-$199,815
15.     For 1202 H Property Owner-$180,564
16.     For 2026 MLK Ave. Property Owner-$90,018

E.      Pierce the corporate veil of Defendant Apparel By Gold LLC ("Buzz Park View

Dispensary") to hold its owner, Defendant James Goldring jointly liable for equitable damages

against the illegal cannabis dispensary he owns and controls;

F.      Grant Plaintiff recovery for the costs of litigation, and reasonable attorney fees, and any

other relief deemed equitable by the Court.

Respectfully submitted,

Alliance of Legal Cannabis Entities-DC, LLC


/s/ Jon L. Brunenkant
Jon L. Brunenkant
DC Bar No. 966630
Brunenkant & Associates PLLC
1717 Pennsylvania Avenue NW
Suite 1025
Washington, DC 20006
(202) 559-8637
jonbrunenkant@gmail.com

Attorney for Alliance of Legal Cannabis Entities-DC, LLC


December 17, 2024